Brett W. Johnson (#021527)
Eric H. Spencer (#022707)
Colin P. Ahler (#023879)
Derek C. Flint (#034392)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: bwjohnson@swlaw.com
             espencer@swlaw.com
             cahler@swlaw.com
             dflint@swlaw.com
*Attorneys for Proposed Intervenor-Defendants
Donald J. Trump for President, Inc., Republican
National Committee, National Republican
Senatorial Committee, National Republican
Congressional Committee, Arizona Republican
Party, Coconino County Republican Committee,
Maricopa County Republican Committee, Yuma
County Republican Committee*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye,<br><br>          Plaintiffs,<br><br>          v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona,<br><br>          Defendant. | No. 3:20-cv-08222-GMS<br><br>**Motion to Intervene** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## **Introduction**

Plaintiffs' claims in this action implicate significant, protectable interests of the Donald J. Trump for President, Inc. campaign, the Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee as national political parties, the Arizona Republican Party as a state political party, and the Coconino County Republican Committee, Maricopa County Republican Committee, and Yuma County Republican Committee as county political parties (collectively, "Proposed Intervenors"). Plaintiffs seek to create a race- and geography-based exception to a long-standing, generally applicable state law that would give certain citizens more time to return their requested early ballots than *every other Arizona voter* in the upcoming General Election. (*See* Doc. 1 at 26). What is more, Plaintiffs' unwarranted delay in bringing their claims on the eve of a General Election threatens the orderly administration of that election.

Allowing the otherwise-tardy ballots for select citizens to be counted would affect the Proposed Intervenors' interests in at least three ways. *First*, it would unquestionably affect the share of votes that candidates in the State of Arizona receive. *Second*, it would treat the ballots of specific citizens differently than other similarly-situated voters within the same counties. *Third*, it would sow confusion and delay in the administration of the upcoming General Election and all future elections, requiring the Proposed Intervenors to divert resources to educate voters about the newly created exceptions to Arizona's generally applicable rules and resulting in the waste of resources expended under Arizona's existing rules. To guard against these harms, the Proposed Intervenors respectfully request that the Court grant this Motion to Intervene under Federal Rule of Civil Procedure 24.[1] The Secretary of State has conflicting interests in defending against such claims and therefore intervention is necessary in order to mount a full-throated defense to this lawsuit.

---

[1] In accordance with Federal Rule of Civil Procedure 24(c), a responsive pleading setting out the "defense[s] for which intervention is sought" is attached hereto as Exhibit A.

- 1 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**Relevant Background**

On August 26, 2020, Plaintiffs initiated this action pursuant to the Fourteenth Amendment of the U.S. Constitution, Article 2, § 21 of the Arizona Constitution, and Section 2 of the Voting Rights Act of 1965 ("VRA"). (Doc. 1 at 24-26). They seek three forms of overlapping relief: (1) a declaratory judgment that the Secretary of State's "failure to count" vote-by-mail ballots "of Tribal Members living On-Reservation that are postmarked on or before Election Day violates existing law"; (2) injunctive relief requiring the Secretary of State to count vote-by-mail ballots "cast by Tribal Members living On-Reservation that are postmarked on or before Election Day for all future elections"; and (3) injunctive relief ordering the Secretary of State to count vote-by-mail ballots "cast by Tribal Members living On-Reservation in the 2020 election that are postmarked by Election Day and received on or before November 13, 2020." (Doc. 1 at 26).

The Proposed Intervenors are parties that will be significantly impacted by the extraordinary and last-minute relief that Plaintiffs seek in this action. Donald J. Trump for President, Inc. is the official campaign for the re-election of United States President Donald J. Trump. The Republican National Committee is a national political committee of the Republican Party. *See* 52 U.S.C. § 30101(14). It manages the Republican Party's business at the national level. This includes developing and promoting the Party's national platform and fundraising and election strategies; supporting Republican candidates at all levels across the country, including in Arizona; and assisting state parties throughout the country (including Arizona) to educate, mobilize, assist, and turn out voters. The National Republican Senatorial Committee is a national political party that focuses on electing Republicans to the United States Senate, while the National Republican Congressional Committee is devoted to increasing the number of Republicans in the United States House of Representatives. The Arizona Republican Party is the official state party committee of Arizona Republicans. It represents Republican voters in Arizona and plays an active role in oversight of the political process in Arizona. These national and state parties seek to ensure Republican candidates and voters are treated uniformly throughout the State.

The Maricopa County Republican Committee and Yuma County Republican Committee seek to elect Republican candidates in their respective counties, but would be severely disadvantaged by the policy Plaintiffs seek to implement in Apache, Coconino, and Navajo Counties because their candidates and voters would receive less time to return early ballots. The Coconino County Republican Committee likewise seeks to elect Republican candidates within that county, and would be disadvantaged by Plaintiffs' proposed policy because some voters and candidates within the county would receive less time to return early ballots than others.

Individually and collectively, the Proposed Intervenors have a significant interest in ensuring that their supporters' votes and their candidates' vote shares are not diluted by illegal maneuvers or abuses of judicial proceedings that would impact candidates' and voters' right to a fair election. In addition, the Proposed Intervenors have an interest in ensuring that the Court receives full-throated counterarguments to Plaintiffs' challenge to A.R.S. § 16-548(A)—the long-standing and uniform statute that requires all ballots in the State of Arizona to be "received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day"— and the proper perspective on United States Post Office operations that the Secretary of State will not be in a position to address.

<u>**Argument**</u>

**I.**   <u>**The Proposed Intervenors Are Entitled to Intervention As a Matter of Right Under Rule 24(a)(2).**</u>

Federal Rule of Civil Procedure 24(a)(2) provides a right of intervention, on timely motion, to anyone that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Accordingly, "[t]he district court must grant the motion to intervene if four criteria are met: [1] timeliness, [2] an interest relating to the subject of the litigation, [3] practical impairment of an interest of the party seeking intervention if

intervention is not granted, and [4] inadequate representation by the parties to the action." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

In considering whether these criteria are satisfied, the Ninth Circuit has held that "Rule 24(a) is construed broadly in favor of intervention." *Id.* Moreover, the Rule 24(a)(2) analysis must be "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (internal citation & quotation marks omitted). Courts are also "required to accept as true the non-conclusory allegations made in support of an intervention motion." *Id.* at 819. Applying these standards, the Proposed Intervenors easily satisfy the four conditions for intervention as a matter of right.

### A. The Motion to Intervene Is Timely.

Courts look to the following factors to determine whether a motion to intervene is timely filed: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (internal quotation marks omitted). Prejudice to existing parties is "the most important consideration in deciding whether a motion to intervene is timely," *see United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (internal citations & quotation marks omitted), and there is generally no prejudice when a motion to intervene is "filed before the district court ha[s] made any substantive rulings," *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). The Ninth Circuit has held that a motion to intervene is timely when it is filed before the defendants have filed an answer, "before any proceedings ha[ve] taken place," and "before the district court ha[s] made any substantive rulings." *See id.*

Here, the Motion is filed one week after the Complaint was filed. The Defendant in this case has not yet filed an answer or otherwise responded to the Complaint. No substantive proceedings have taken place whatsoever. Therefore, the Proposed Intervenors have made a timely motion for intervention. No prejudice to the existing parties will possibly result from intervention at such an early stage of the case.

1

**B.  The Proposed Intervenors Have a Significant Interest in this Proceeding.**

2

"Whether an applicant for intervention as of right demonstrates sufficient interest in

3

an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest

4

need be established.'" *Id.* (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.

5

1993)) (alteration in original). "To demonstrate this interest, a prospective intervenor must

6

establish that (1) 'the interest [asserted] is protectable under some law,' and (2) there is a

7

'relationship between the legally protected interest and the claims at issue.'" *Id.* (quoting

8

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995),

9

*abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173

10

(2011)) (alteration in original). This "interest test" is not "a clear-cut or bright-line rule" but

11

it is satisfied when "the resolution of the plaintiff's claims actually will affect the applicant."

12

*United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v.*

13

*Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).

14

Here, Proposed Intervenors have at least three cognizable interests in this

15

proceeding. *First*, they have a "significantly protectable interest" in electing candidates at

16

all levels of government and re-electing the President in particular. *See Bates v. Jones*, 127

17

F.3d 870, 873 n.4 (9th Cir. 1997) (holding that the interest in re-election is a "significantly

18

protectable interest"). There is a relationship between this interest and Plaintiffs' claims

19

because resolution of those claims will affect the percentage of votes that candidates receive

20

in the November 3, 2020 General Election. If Plaintiffs prevail on their claims, the Secretary

21

of State will be forced to count (in reality, somehow force county officials to count) ballots

22

that would otherwise not be counted due to their tardy return. Counting these ballots would

23

affect Proposed Intervenors and other candidates seeking office at the local, state, and

24

federal level because it would change the share of votes those candidates receive and give

25

preference to one specific type of voter over all others.

26

*Second*, the Proposed Intervenors have an interest in ensuring that the ballots cast by

27

voters who do not meet the Complaint's criteria are treated the same as all other ballots in

28

the State of Arizona and within the affected counties. The relief Plaintiffs seek in this case

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

would result in disparate treatment of ballots, giving on-reservation tribal members an extra ten days to have their ballots received and counted this year. (*See* Doc. 1 at 26). This would harm the Proposed Intervenors' interests by treating the ballots of certain on-reservation tribal voters differently than off-reservation tribal voters and differently than all other voters in the State of Arizona.

*Third*, the Proposed Intervenors have an interest in the orderly and efficient administration of the General Election pursuant to Arizona's current, generally applicable rules. Plaintiffs' claims, which they inexplicably decided to bring less than 70 days before the General Election, threaten to create chaos. As the Supreme Court has noted, "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). As a result, the Court has cautioned against upending established election rules when an election is "imminen[t]" and a court has "inadequate time to resolve the factual disputes." *See id.* at 8.

Yet that is exactly what Plaintiffs ask the Court to do here, ignoring the downstream effects their desired outcome would have on candidates, voters, and the administration of the election. For example, Plaintiffs' requested relief—allowing some voters to return ballots up to ten days after the 2020 General Election—would create significant delays in election results. Among other things, this would potentially impact the timing of the election canvass, *see* A.R.S. § 16-648, recounts, *see* A.R.S. § 16-661, and election contests, *see* A.R.S. § 16-672. All these issues would have a significant impact on candidates, whose electoral prospects depend on the outcome of these processes, and ultimately on the voters who seek to elect these candidates. Plaintiffs' proposed relief would further render incorrect the assumptions on which the Proposed Intervenors have based their efforts and expenditures in the election cycle so far, and the would require the Proposed Intervenors to spend further resources to recalibrate their electoral strategies and reeducate their voters and staff regarding the change in Arizona's electoral rules. Thus, the Court should grant this Motion because the Proposed Intervenors have the necessary interest in the outcome of this

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

matter.

### C. The Disposition of the Action Will Impair or Impede the Proposed Intervenors' Ability to Protect Their Interests.

Because the Proposed Intervenors' interests will be significantly impaired if Plaintiffs' lawsuit succeeds, the Proposed Intervenors also satisfy the third requirement of Rule 24. The Ninth Circuit follows the Rule 24 Advisory Committee notes in determining whether an applicant's interests may be impaired by an action. *Berg*, 268 F.3d at 822. Those notes provide that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene." *Id.* (quoting Fed. R. Civ. P. 24 advisory committee's notes). The "relevant inquiry" in assessing this intervention element "is whether [the lawsuit] 'may' impair rights 'as a practical matter' rather than whether the [lawsuit] will 'necessarily' impair them." *City of L.A.*, 288 F.3d at 401.

Absent intervention, the Proposed Intervenors would be unable to effectively protect their interests in this case. Namely, they would be unable to ensure that (1) the share of candidates' votes is not impacted by Plaintiffs' claims; (2) the ballots of all voters in the State of Arizona are treated the same; and (3) the General Election is administered in an orderly and efficient manner. These threatened impairments of the Proposed Intervenors' interests satisfy the third intervention element.

### D. The Existing Parties Do Not Adequately Represent the Proposed Intervenors' Interests.

Intervention as a matter of right is appropriate where, as here, other parties in the litigation will not adequately represent the intervenor's interest. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal citations omitted). To assess whether a party's interest is adequately represented, courts consider several factors, including:

- 7 -

(1) whether the interest of a present party is such that it will *undoubtedly* make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 952 (9th Cir. 2009) (emphasis added) (internal citations & quotation marks omitted). The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Citizens for Balanced use*, 647 F.3d at 898.

Here, the Proposed Intervenors satisfy this "minimal" burden because their interests are not the same as those of the existing Defendant—the Secretary of State. *See Citizens for Balanced Use*, 647 F.3d at 898. The Secretary of State is an official who has already been elected to public office and is named in her official capacity only. As such, she "must represent the broad public interest"—not the specific interests of candidates for office, and certainly not those of President Trump (whom she has publicly castigated). *See Forest Conservation Council*, 66 F.3d at 1499 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)). Indeed, the Secretary of State has made clear that her interests are not aligned with those of President Trump with regard to voting-by-mail: as Plaintiffs state in their Complaint, the Secretary of State recently asked the Arizona Attorney General to investigate the Trump administration's alleged recent proposed changes to the U.S. Postal Service that undergird the Plaintiffs' Complaint. (*See* Doc. 1 at ¶ 19). In fact, the Secretary accused the President of committing a *crime* and opined, "whether President Trump, and others at this direction, has conspired to violate A.R.S. [§] 16-1003." *See* Secretary of State Katie Hobbs (@SecretaryHobbs), Twitter (Aug. 14 2020, 9:49 AM), https://twitter.com/SecretaryHobbs/status/1294315111738273792. Because the Secretary is on record making the same (unfounded) vote-by-mail allegations as the Plaintiffs, she can hardly be expected to defend the postal allegations in the Complaint.

In addition, the Secretary of State's interpretation of Section 2 of the VRA diverges significantly from the Proposed Intervenors' interpretation. This divergence is evident in

the briefing that is pending before the U.S. Supreme Court in *Democratic National Committee v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc), *petition for cert. filed*, (U.S. Apr. 27, 2020) (Nos. 19-1257, 19-1258). In that case, the Ninth Circuit held that various provisions of Arizona election law violate Section 2 of the VRA. *See id.* at 998-99. In its petition for certiorari, the Arizona Republican Party—an Intervenor-Defendant—argued that the Court should grant certiorari and reverse the Ninth Circuit because, *inter alia*, the Ninth Circuit applied the incorrect standard under Section 2. By contrast, the Secretary of State filed a brief *opposing* certiorari, arguing that the Ninth Circuit's Section 2 analysis was correct. Given that this case also involves the application of Section 2 of the VRA, it is apparent that the Secretary of State would not adequately represent the Proposed Intervenors' interests or make the same arguments. *See Berg*, 268 F.3d at 824 (granting motion to intervene when the proposed intervenors showed that the defendants would "likely" not advance the same arguments).

The Secretary of State has also recently settled a similar lawsuit seeking to extend the early-ballot-return deadline, *see Voto Latino Found. v. Hobbs*, No. 2:19-cv-05685-DWL (D. Ariz.) (Doc. 57-1), and agreed to work towards implementing a postmark deadline akin to what Plaintiffs seek here. The settlement agreement provides "[w]ithin 90 days after the Secretary's official canvas of the November 3, 2020 General Election, the Secretary's Office shall review . . . the policy implications associated with implementing a postmark deadline in lieu of Arizona's Election Day Receipt Deadline and . . . the feasibility of implementing a postmark deadline." *Id*. at 5. In other words, the Secretary committed to explore a postmark deadline as a desirable outcome and has an incentive to ultimately reach that conclusion, lest she be sued by those litigants again. This weighs as a factor in the Secretary's continued ability to defend the Election Day deadline without granting further concessions simply to avoid litigation (and political fallout).

Finally, the Secretary of State recently settled a lawsuit brought by the Navajo Nation in *Navajo Nation v. Hobbs*, 3:18-cv-08329-DWL (D. Ariz.) (Doc. 44-2). In that case, the Navajo Nation (along with several Navajo Nation voters) sought to change Arizona law

with respect to unsigned early ballot affidavits. The Secretary once again settled that lawsuit (without ever filing a motion to dismiss) and agreed to propose language in the then-draft Elections Procedures Manual that would allow ballot-curing in contravention of Arizona law. *See id.* at 3. The Arizona Attorney General ultimately vetoed this provision, and thus the special carveout was not allowed to take effect. But the fact the Secretary would agree to that settlement indicates that plaintiffs that file such lawsuits will find a sympathetic ear.

Thus, the Court should grant the Motion because no existing party adequately represents the Proposed Intervenors' interests. The Secretary should not be criticized for her recent litigation positions (after all, she has a significant voice in Arizona election policy) but history demonstrates she should not be the *only* voice defending against radical lawsuits that seek to chip away at Arizona's electoral fabric.

## II.   In the Alternative, Permissive Intervention Is Appropriate Under Rule 24(b)(2).

If the Court does not grant intervention of right under Rule 24(a)(2), the Proposed Intervenors should be granted permissive intervention under Rule 24(b)(2). Rule 24(b)(2) states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

The standards for permissive intervention are less stringent than those for intervention as of right. They require "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).[2] "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

All requirements for permissive intervention are met here. The timeliness requirement is satisfied for the reasons discussed above. As noted, there is no risk of

---

[2] "Rule 24(b) does not require a showing of inadequacy of representation." *Groves v. Ins. Co. of N. Am.*, 433 F. Supp. 877, 888 (E.D. Pa. 1977).

prejudice to the existing defendant given the early posture of this case. Moreover, the Proposed Intervenors seek intervention to protect the interests of candidates for public office at every level, and the voters who support them, which will be directly impacted by the legal and factual claims made by Plaintiffs. As such, the Proposed Intervenors' defenses necessarily "share[] with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). And if Plaintiffs have jurisdictional grounds to assert their claims in this action, there is certainly jurisdiction to present defenses to those claims. Recognizing this fact, the District of Arizona has consistently permitted intervention by political committees like the Proposed Intervenors in cases involving challenges to Arizona's election laws. *See, e.g.*, *Feldman v. Ariz. Secretary of State's Office*, 2:16-cv-01065-DLR, Doc. 44 (May 10, 2016); *Ariz. Democratic Party v. Hobbs*, 2:20-cv-01143, Doc. 35 (June 26, 2020). Accordingly, permissive intervention constitutes appropriate, alternative relief to intervention as a matter of right.

## Conclusion

All potentially affected parties deserve the opportunity to be heard in this matter. The Proposed Intervenors thus respectfully request that the Court permit them to intervene to protect their interests in this action.

DATED this 3rd day of September, 2020.

SNELL & WILMER L.L.P.

By: */s/ Brett W. Johnson*
Brett W. Johnson
Eric H. Spencer
Colin P. Ahler
Derek C. Flint
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Proposed Intervenor-Defendants Donald J. Trump for President, Inc., Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Arizona Republican Party, Coconino County Republican Committee, Maricopa County Republican*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Committee, and Yuma County*
*Republican Committee*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on September 3, 2020 I electronically transmitted the attached

3 document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4 Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

5

6 *s/Elysa Hernandez*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 13 -