Brett W. Johnson (#021527)
Eric H. Spencer (#022707)
Colin P. Ahler (#023879)
Derek C. Flint (#034392)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
　　　　espencer@swlaw.com
　　　　cahler@swlaw.com
　　　　dflint@swlaw.com
*Attorneys for Proposed Intervenor-Defendants Donald J. Trump for President, Inc., Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Arizona Republican Party, Coconino County Republican Committee, Maricopa County Republican Committee, Yuma County Republican Committee*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona,<br><br>　　　　Defendant. | No. 3:20-cv-08222-GMS<br><br>**Reply in Support of Motion to Intervene** |

**Introduction**

Defendant Secretary of State Katie Hobbs (the "Secretary") admits she "has already initiated discussions with the Plaintiffs with a view toward early settlement," and that she is concerned the Proposed Defendant-Intervenors would "delay and obstruct[]" her efforts. (Doc. 22 at 10). The fact that the Secretary would so readily settle a case involving the validity of an important election statute—as she has already done in similar lawsuits— shows exactly why her representation of the Proposed Intervenor-Defendants' interests is inadequate. Proceeding with this litigation and the settlement negotiations without the Proposed Intervenor-Defendants creates a manifest injustice, as excluding them will render them incapable of safeguarding their interests and those of their members. Eleventh-hour changes to the well-established election statute at issue in this case would impact Republican candidates and voters, and denying the Proposed Intervenor-Defendants a voice on a fundamental issue prevents them from ensuring that election administration laws are not unjustly changed at the last minute to the detriment of Republican candidates and voters.

Even if the Secretary had not extended a premature olive branch to Plaintiffs, intervention is still be proper. Although the Secretary and Plaintiffs appear to concede that the intervention motion (the "Motion") (Doc. 12) is timely, (*See* Docs. 22, 30), they argue the Motion should be denied because the Proposed Intervenor-Defendants lack a significantly protectable interest. (Doc. 22 at 8-10; Doc. 32 at 5-6). This argument ignores the fact that courts routinely grant intervention motions asserting the same interests asserted here. The Secretary and Plaintiffs also argue the Motion should be denied because the Proposed Intervenor-Defendants cannot overcome the "presumption of adequate representation." (Doc. 22 at 2; Doc. 32 at 6). But that presumption does not apply. Even if it did, the Proposed Intervenor-Defendants easily overcome it because their Republican-specific interests differ significantly from those of the Secretary and even other non-party county recorders, who are actually responsible for administering the election.[1] Accordingly,

---

[1] Interestingly, the Secretary makes no reference of including the critical county recorders in any settlement discussions.

1

the Court should grant the Motion.

## Argument

### I. The Proposed Intervenor-Defendants Have Significantly Protectable Interests.

The Secretary and Plaintiffs claim the Proposed Intervenor-Defendants do not have a sufficient interest in this litigation to qualify for intervention. (Doc. 22 at 8-9; Doc. 32 at 5-7). In doing so, the Secretary and Plaintiffs ignore the bulk of the authority on this issue, including the authorities cited in the Motion.

As explained in the Motion, the Proposed Intervenor-Defendants have a "significantly protectable interest" in electing candidates at all levels of government, including the Presidency. *See Bates v. Jones*, 127 F.3d 870, 873 n.4 (9th Cir. 1997); (Doc. 12 at 5). The Secretary does not attempt to distinguish *Bates* or cite any contradictory authority. Instead, she claims that a political party's interest in electing candidates is too generalized to warrant intervention. (Doc. 22 at 9). Quite the contrary, courts in the Ninth Circuit *routinely* grant political parties' motions to intervene in election-related challenges in order to protect their interests in state election policies.

For example, in *Issa v. Newsom*, the Eastern District of California granted two Democratic political parties' motion to intervene in a vote-by-mail lawsuit. *See* No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020). The political parties argued that they had significantly protectable interests in "asserting the rights of their members to vote," "advancing their overall electoral prospects," and "diverting their limited resources to educate their members on election procedures." *Id.* at *3. The court agreed, holding that "such interests are *routinely* found to constitute significantly protectable interests." *Id.* (emphasis added). Similarly, in *Paher v. Cegavske*, the Democratic Party successfully intervened in a vote-by-mail lawsuit based on its interest in "promot[ing] the franchise and ensur[ing] the election of Democratic Party candidates." No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020). The cases cited in Plaintiffs' Response, (Doc. 32 at 7), do not contradict these holdings, as not a single one of those cases even addressed the issue of intervention. *See, e.g.*, *Ohio State Conference*

*of NAACP v. Husted*, 768 F.3d 524, 530 (6th Cir. 2014) ("We do not address in this appeal whether the district court's intervention decisions were proper . . . ."), *vacated on other grounds*, 2014 WL 10384647, at *1 (6th Cir. Oct. 1, 2014).

Here, the Proposed Intervenor-Defendants have protectable interests that are nearly identical to the interests of the successful intervenors in *Issa* and *Paher*. Namely, they have an interest in electing Republican candidates, (Doc. 12 at 5), ensuring the ballots of Republican voters are treated the same as all other ballots, (*Id.* at 5-6), educating their members on election procedures, (*Id.* at 6), and ensuring that the orderly administration of the election is not disrupted by last minute changes to the established regulations. These interests are indistinguishable from the interests that were deemed "significantly protectable" in *Issa* and *Paher*.

The Secretary also claims that the Proposed Intervenor-Defendants' "concerns" do not warrant intervention because they are "conjectural," (Doc. 22 at 9), citing *Dilks v. Aloha Airlines*, 642 F.2d 1155 (9th Cir. 1981). But the Ninth Circuit has held that intervention is proper even when the impairment of a proposed intervenor's interests is not certain. *See United States v. City of L.A.*, 288 F.3d 391, 401 (9th Cir. 2002) (holding that intervention is proper when a lawsuit "may" impair a proposed intervenor's rights). *Dilks* does not contradict this holding. In *Dilks*, the proposed intervenor claimed to have an interest in the proceeding based on "potential liability for damages," when the plaintiff was not in fact seeking damages from the putative intervenor. 642 F.2d at 1157. The court concluded that interest—which was completely different from the Proposed Intervenor-Defendants' interests in this case—was "speculative," but did not deny the motion to intervene on that ground. *See id.*

In any event, if the Plaintiffs receive relief or obtain a settlement, that will undoubtedly impact the Proposed Intervenor-Defendants' interests in this case. The Secretary does not dispute that Plaintiffs' requested relief would affect the vote-share of Republican candidates, would result in disparate treatment of Republican voters' ballots, and would require the Proposed Intervenor-Defendants to expend resources to reeducate

3

1  voters and staff. (Doc. 22 at 9-10); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (courts are "required to accept as true the non-conclusory allegations made in support of an intervention motion"). Thus, the Proposed Intervenor-Defendants possess the necessary interests in the outcome of this litigation.

## II.   The Presumption of Adequacy Does Not Apply.

The Secretary and Plaintiffs claim that a "presumption of adequacy" applies to the Secretary's representation of the Proposed Intervenor-Defendants' interests in this matter because "[t]he 'ultimate objective' of both the Secretary and the Proposed Intervenors is to defend the existing ballot-return deadline." (Doc. 22 at 4; Doc. 32 at 7). The Secretary and Plaintiffs are mistaken for at least two reasons.

*First*, they misconstrue what it means to share an "ultimate objective." In the Ninth Circuit, the presumption of adequacy does not apply unless a proposed intervenor's interest "is *identical* to that of one of the present parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). Contrary to the Secretary's and Plaintiffs' assertion, two parties do not share the same "ultimate objective" merely because they seek to defend the same claim. For example, in *MD Helicopters, Inc. v. United States*, the District of Arizona held that the government-defendant and the proposed intervenor did not share the same "ultimate objective" even though they both sought to uphold the same agency decision. *See* No. CV-19-02236-PHX-JAT, 2019 WL 8953136, at *5 (D. Ariz. May 10, 2019). The court reasoned that although the proposed intervenor and the government both had the "short-term objective" of upholding the agency decision, their "ultimate objectives" were different: the government sought to procure a service, whereas the proposed intervenor sought to protect its own financial interest. *Id.* Consequently, the court held that a presumption of adequacy did not apply. *Id.*; *see also In re Catholic Bishop of Spokane*, No. 04-08822, 2006 WL 6817586, at *5-6 (B.A.P. 9th Cir. Sept. 6, 2006) (holding that existing party and proposed intervenor did not share same ultimate objective when they did not have "sufficiently congruent interests" and their "interests in negotiating a settlement may differ"); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909-PHX-DGC, 2009 WL

4438933, at *5 (D. Ariz. Nov. 24, 2009) (holding that the defendants "may not share the same ultimate objective" as the proposed intervenors even though "[a]ll seek to have the Act held constitutional").

Here, the "ultimate objective" of the Secretary and the Proposed Intervenor-Defendants is not the same. Although the Proposed Intervenor-Defendants and the Secretary may share the same "short-term" objective of defending the ballot-return deadline, their broader interests diverge significantly. Again, the Proposed Intervenor-Defendants seek to elect Republican candidates and protect Republican voters specifically. The Secretary does not share these objectives. Nor should she: the Secretary is an elected official who is responsible for administering Arizona's elections in "the broad public interest." *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (citations omitted), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). As such, the Secretary and the Proposed Defendant-Intervenors do not share the same "ultimate objective."

*Second*, the Secretary's commitment to reach an "early settlement" with Plaintiffs outside the legislative process, (Doc. 22 at 10), undermines her argument that her "ultimate objective" is to vigorously defend the ballot-return deadline. The Proposed Intervenor-Defendants' commitment to upholding the ballot-return deadline without qualification is beyond dispute. The same cannot be said for the Secretary. She points to her settlement of the *Voto Latino* litigation as evidence that she is committed to upholding the deadline. (Doc. 22 at 4). But despite the concessions the Secretary made as part of the *Voto Latino* settlement, the ballot-return deadline has been challenged yet again, proving those earlier concessions were insufficient to satiate Plaintiffs. Surely, Plaintiffs will demand *additional* concessions from the Secretary as part of any settlement; otherwise, why settle? Without the Proposed Intervenor-Defendants' involvement, there is no guarantee that settlement will safeguard their interests. Accordingly, the Secretary's apparent eagerness to settle this lawsuit without legislative process and potentially in contradiction of the Elections Manual, which requires the approval of the Governor and Attorney General, shows that she does not

5

share the same ultimate objective as the Proposed Intervenor-Defendants. *See In re Catholic Bishop of Spokane*, 2006 WL 6817586, at *6. The Proposed Intervenor-Defendants easily satisfy their "minimal" burden of demonstrating that representation of their interests "may be" inadequate. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

**III.   Even if the Presumption of Adequate Representation Applies, the Proposed Intervenor-Defendants Overcome It.**

Citing *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003), the Secretary claims that a party must make a "very compelling" showing to overcome the presumption of adequacy. (Doc. 22 at 3-4). But the Secretary takes *Arakaki*'s statement out of context. *Arakaki* held that a party must make a "very compelling showing" to overcome the presumption "that a state adequately represents its citizens when the applicant *shares the same interest*." 324 F.3d at 1086 (emphasis added). It did *not* hold that a party must make a "very compelling showing" of inadequate representation when a proposed intervenor merely shares the same "ultimate objective" as an existing party. *See id.* Because the Secretary does not dispute that her interests differ from those of President Trump and the Republican Party, the "very compelling" standard does not apply. (*See* Doc. 22).

Instead, the Ninth Circuit has explained that a proposed intervenor overcomes the presumption of adequacy (when the presumption applies) upon a showing that it does not have "sufficiently congruent interests" with any existing party. *Berg*, 268 F.3d 810 at 823. In *Berg*, the Ninth Circuit held that "even if the presumption applie[d]" in that case, the proposed intervenors overcame it because the government-defendants could not "be expected under the circumstances presented to protect" the proposed intervenors' "private interests." *Id.* The court further held that it was "sufficient for Applicants to show that, because of the difference in interests, [that] it is likely that Defendants will not advance the same arguments as Applicants." *Id.* at 824.

Here, the Secretary does not contest that the Proposed Intervenor-Defendants are "likely" to present different factual and legal arguments than the Secretary. (*See* Doc. 22 at

6

12). Nor does the Secretary dispute that she lacks an interest in the vote-share Republican candidates receive, the relative treatment of Republican voters' ballots, or the education of Republican Party members on election procedures. (*See* Doc. 22). To be sure, the Secretary should not "be expected under the circumstances" to safeguard the interests of a particular political party or campaign. *See Berg*, 268 F.3d at 823. The Secretary instead appears to take the position that the presentation of different arguments is "irrelevant," (*Id.* at 7), which is plainly incorrect in light of *Berg*. *See* 268 F.3d at 824. Proposed Intervenor-Defendants easily show that their interests are not "congruent" with the Secretary's interests, which is all that *Berg* requires.

But, even if that were not enough, a proposed intervenor can also show that the government's representation of its interests is inadequate when the government is seeking to settle a case. For example, in *Conservation Law Foundation of New England, Inc. v. Mosbacher*, the court held "evidence that the parties are 'sleeping on their oars' or 'settlement talks are underway' may be enough to show inadequacy." 966 F.2d 39, 44 (1st Cir. 1992) (citations omitted). The court found that intervention was proper in that case because the proposed intervenor "demonstrated both an interest in, and an adverse effect from," the government's settlement negotiations. *Id.* Similarly, in *Sanguine, Ltd. v. U.S. Department of Interior*, the court held that intervention was proper when the government entered into a consent decree with the plaintiff 33 days after it filed suit. 736 F.2d 1416, 1419 (10th Cir. 1984).

Accordingly, the Secretary's revelation that she "has already initiated discussions with the Plaintiffs with a view toward early settlement" is further evidence that her representation is inadequate. (Doc. 22 at 10-11). Consistent with the Secretary's recent actions in other cases, (*See* Doc. 12 at 9-10), it appears her strategy in this case is to make concessions outside the legislative process and settle quickly. If the Proposed Intervenor-Defendants are not allowed to participate in this litigation, they will have no way to ensure their interests are protected by a settlement agreement and the regulations governing the orderly administration of elections in Arizona are maintained. Intervention is thus

1  warranted. *See Mosbacher*, 966 F.3d at 44; *Sanguine*, 736 F.2d at 1419.

2  The Secretary largely relies on two cases—*Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011), and *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009)—to support her claim that her representation of the Proposed Intervenor-Defendants' interests is adequate. (Doc. 22 at 6-7). Both cases are easily distinguished.

In *Geithner*, the proposed intervenor was an individual pastor who argued that the presumption of adequacy should be rebutted solely because he disagreed with the government's legal position and litigation strategies it may pursue in the future. *See* 644 F.3d at 842-43. The pastor did not allege that his interests were incongruent with those of the government. *See id.* Here, by contrast, the Proposed Intervenor-Defendants have shown that their interests are incongruent with the Secretary's *and* that they will raise different legal arguments than the Secretary. As discussed above, this is more than sufficient to overcome the presumption under *Berg*, to the extent that presumption even applies.

*Perry* is distinguishable for similar reasons. In *Perry*, the court found that the proposed intervenor's interests were "identical" to the interests of an existing party. 587 F.3d at 951. As a result, the proposed intervenor could not argue that its interests were incongruent with those of an existing party, and its efforts to rebut the presumption were limited to critiques of the existing party's litigation strategy. *See id.* at 953-54. This led the court to "conclude that the real differences between the [existing party] and the [proposed intervenor] boil down to strategy calls." *Id.* at 954. And, unlike in this case, the litigation strategy of the existing party in *Perry* did not involve an attempt to reach a quick-and-easy settlement from the outset of the litigation. *See id.* Thus, even if the presumption of adequacy applies, the Proposed Intervenor-Defendants easily overcome it and are entitled to intervention as a matter of right.[2]

---

[2] Plaintiffs claim they "did not delay in filing this lawsuit." (Doc. 32 at 8). But as the Proposed Intervenor-Defendants explain in their Response to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs have no excuse for waiting until two months before Election Day to challenge a 23-year-old statute. Granting their Motion for Preliminary Injunction at the eleventh hour would violate well-established Supreme Court precedent.

8

**IV.    In the Alternative, Permissive Intervention Is Appropriate.**

The Secretary and Plaintiffs make three arguments as to why permissive intervention is inappropriate here. All fail.

*First*, the Secretary argues that the Proposed Intervenor-Defendants' participation in this litigation would prejudice existing parties or cause "undue delay." Interestingly, the Secretary points to her early-settlement goal, and the Proposed Intervenor-Defendants' potential "obstruction" of that settlement, as a reason why the Court should deny permissive intervention. (Doc. 22 at 10-11). But, as discussed above, the Secretary's apparent interest in settling this case (and similar cases before it) is, in fact, a compelling reason why the Court should permit the Proposed Intervenor-Defendants to intervene. Intervention will allow the Proposed Intervenor-Defendants to ensure that a potential settlement agreement does not harm their specific interests. The only case the Secretary cites to support the argument that "frustrat[ing]" settlement efforts amounts to prejudice is irrelevant, as it involved an attempt to intervene after a case had already been dismissed. (Doc. 22 at 12) (citing *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019)).[3] And the Secretary and Plaintiffs' claim that the Proposed Intervenor-Defendants' intervention will "obstruct[]" or "delay" the course of this litigation or threaten the "orderly administration of a general election" is baseless; as explained in the Motion, the Proposed Intervenor-Defendants also have a strong interest in the orderly, efficient administration of the General Election. (Doc. 12 at 7).

*Second*, the Secretary and Plaintiffs argue that the Proposed Intervenor-Defendants would only "duplicate" or "introduce additional unnecessary issues into the lawsuit." (Doc.

---

*See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). If the Secretary is not going to challenge Plaintiffs on this fundamental legal principle and instead capitulate via settlement, then this is another example of Proposed Intervenor-Defendants' necessity to these proceedings and ensuring a more fulsome presentation of the legal and factual arguments for the Court's consideration.

[3] The Secretary also raises the illogical argument that the Proposed Intervenor-Defendants' intervention would be prejudicial because their interests are "antithetical" to *Plaintiffs'* interests. (Doc. 22 at 12). This argument is clearly contrary to how the adversarial system operates, as the entire purpose of litigation is to resolve disputes between parties with "antithetical" interests.

9

22 at 12; Doc. 32 at 9). This is incorrect. As a threshold matter, it's impossible to know what claims and defenses the Secretary may raise given that she has not yet filed a responsive pleading. But, in any event, the Proposed Intervenor-Defendants will raise important arguments in this proceeding, including, but not limited to, the defenses described in their Answer. (*See* Doc. 12-1). Moreover, the Proposed Intervenor-Defendants have already begun to mount a vigorous defense to Plaintiffs' Motion for Preliminary Injunction by drafting a Response and retaining expert witnesses. The presentation of multiple sides to the factual and legal arguments will only aid the Court in resolving the issues presented in this case. Silencing an interested party's legal and factual positions would undermine the pursuit of justice.

*Third*, the Secretary argues that permissive intervention is not proper because the Proposed Intervenor-Defendants must show an "independent basis for jurisdiction over their claims." (Doc. 22 at 13) (citations omitted). But in *Geithner*, which the Secretary cites for other purposes, the Ninth Circuit held "that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." 644 F.3d at 844. Because the Proposed Intervenor-Defendants are not bringing any cross- or counter-claims and this is a federal-question case that arises under the Constitution and laws of the United States, the Secretary's reliance on an independent-jurisdictional-grounds requirement is misplaced. *See id*; *see also* 28 U.S.C. § 1331.

## Conclusion

The Proposed Intervenor-Defendants have important interests that the Secretary does not adequately represent. Accordingly, the Proposed Intervenor-Defendants satisfy all the elements to intervene as a matter of right under Rule 24(a), and the Court should grant the Motion. (Doc. 12). Alternatively, the Court should grant permissive intervention under Rule 24(b).

DATED this 14th day of September, 2020.

SNELL & WILMER L.L.P.

By: */s/ Brett W. Johnson*
Brett W. Johnson
Eric H. Spencer
Colin P. Ahler
Derek C. Flint
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
*Attorneys for Proposed Intervenor-Defendants Donald J. Trump for President, Inc., Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Arizona Republican Party, Coconino County Republican Committee, Maricopa County Republican Committee, and Yuma County Republican Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

*s/Elysa Hernandez*