# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | No. 3:20-cv-08222-GMS<br><br>**DECLARATION OF HELEN PURCELL** |

I, Helen Purcell, declare as follows:

1. I have been retained as an expert by the Intervenor-Defendants in this lawsuit to opine regarding the impact of extending the November 3, 2020 General Election deadline set forth in A.R.S. § 16-548(A) on Arizona counties and County Recorders.

2. In developing expert opinions in this matter, I have examined the Complaint and the Motion for Preliminary Injunction filed by Plaintiffs.

**I.   Qualifications**

3. I served as the elected County Recorder for Maricopa County, Arizona for seven (7) four-year terms. I was first elected to serve in this position in 1988, and served in this role until January 2017.

4. As the County Recorder for Maricopa County, I was responsible for overseeing voter registration and early voting, and processing and maintaining voter

1  registration and public records. I was also responsible for administering early voting,
2  including mailing out early ballots and verifying early ballot affidavits.

3      5.    My oversight duties with respect to voter registration included: receiving and
4  processing voter registration forms, early ballot requests, and permanent early voting
5  applications; determining voter eligibility and district/jurisdictional assignments for
6  precinct-level voting; maintaining all voter registration records, early voting requests and
7  the Maricopa County permanent early voting list; preparing and distributing voter mailings
8  and communications associated with voter registration and elections; preparing and
9  distributing all early ballots for all elections within Maricopa County; receiving, verifying,
10 and processing all incoming early ballots.

11     6.    My oversight duties with respect to election services included: preparation
12 and programing of all ballots, receiving and processing of petitions and campaign finance
13 filings; supervision of all poll workers and ballot boards, facilitation and set-up of all voter
14 center locations; set-up and programming of ballot marking devices, electronic poll books,
15 and tabulation equipment; tabulation of all voted ballots; and distribution of election results.

16     7.    For the period in time in which I served as the elected Recorder, I attended
17 the Secretary of State's Biennial Election Certification classes as required by A.R.S. § 16-
18 407 and was a Certified Elected Official.

19     8.    I have previously served as: the President of the Arizona Association of
20 Counties; a Board Member of the National Association of Counties and Chairman of
21 NACO's Program and Services Committee and Information Technology Committee; and a
22 member of the U.S. Election Assistance Commission's Board of Advisors, including one
23 of 15 members of the EAC's Technical Guidelines Development Committee. I also served
24 on the Board of Directors of the Arizona Bar Foundation for seven (7) years and served as
25 the President in 2015. I currently serve as a member of the Arizona Supreme Court's Access
26 to Justice Commission.

27     9.    My resumé is attached as **Appendix A**.

28

10. I testified in *Feldman v. Reagan*, Ariz. Dist. Court. No. 2:16-cv-01065 (DLR). Aside from this case, I have not testified as an expert within the last four years.

11. I am being compensated for my time spent on this matter at a rate of $250 per hour.

## II. Expert Analysis and Opinions

12. Election administration is significantly more complex and dynamic than the Plaintiffs' Complaint suggests.

13. The early ballot receipt deadline in Arizona is 7:00 PM on Election Day, pursuant to statute. This deadline has remained unchanged since 1997 and applies equally to all voters.

14. Voters may elect to permanently receive an early ballot for each election in which they are eligible to vote, pursuant to A.R.S. § 16-544, or may request a one-time early ballot by making a timely request to the County Recorder pursuant to A.R.S. § 16-542(E).

15. Voters have ample opportunity to vote from the beginning of the early voting period, 27 days before Election Day, through Election Day. These opportunities to vote are the same for all voters.

16. Pursuant to federal and state law, UOCAVA ballots for military and overseas personnel must be sent at least 45 days before Election Day, which is Saturday, September 19, 2020. As a practical matter, many Arizona counties will distribute UOCAVA ballots on the last business day of that week, which is Friday, September 18, 2020.

17. Voters may return their early ballot through the mail in time for its receipt by the time polls close on Election Day, or deliver it to an in-person vote center, precinct, or drop-box within the county by the close of voting on Election Day. Family members, household members, and caregivers are also permitted to return another person's early ballot. These delivery options effectively allow voters to wait nearly until Election Day to make their vote choices.

18. Pursuant to A.R.S. § 16-550(B), Arizona law allows counties to start counting early ballots fourteen (14) days before Election Day in order to meet ballot processing and canvassing deadlines.

19. There are several administrative reasons to maintain the existing, uniform ballot receipt deadline.

20. Pursuant to A.R.S. § 16-547(C), County Recorders are responsible for mailing specified instructions to every early voter:

> The county recorder or other officer in charge of elections shall supply printed instructions to early voters that direct them to sign the affidavit, mark the ballot and return both in the enclosed self-addressed envelope that complies with section 16-545. The instructions shall include the following statement:
>
>> In order to be valid and counted, the ballot and affidavit must be delivered to the office of the county recorder or other officer in charge of elections or may be deposited at any polling place in the county no later than 7:00 p.m. on election day.

21. At this stage in the election process, it would be very difficult for counties to (1) determine which voters need different instructions; (2) prepare alternative instructions for some voters; (3) find an open printer that is not already consumed with other election materials; (4) extract ballots from those envelopes that are likely already prepared for mailings; and (5) find available staff not already assigned to other election related tasks to re-stuff for mailing.

22. Most counties in Arizona employ voter outreach individuals who are charged with educating prospective voters in their counties regarding the rules and procedures for voting. These outreach employees utilize printed voter-education materials that are handed out to voters, which typically include information about the ballot receipt deadline. In my experience, these county outreach employees spend most of their time educating voters in rural areas. At this stage in the election process, it is unlikely that these outreach employees will have the time necessary to either reeducate voters impacted by a changing election deadline or to print new materials that reflect this change and hand them out to voters.

23. I am aware that the Arizona Secretary of State also promotes the Election Day receipt deadline, including at https://azsos.gov/votebymail. The Secretary of State also traditionally publishes the Election Day receipt deadline in the publicity pamphlet mailed or emailed to every household in Arizona with a registered voter. For example, the 2018 publicity pamphlet mentioned the Election Day receipt deadline twice on pages 6 and 7 (available at https://azsos.gov/sites/default/files/2018_Publicity_Pamphlet_Final.pdf). In my experience, the Secretary of State's 2020 publicity pamphlet has already gone to print in order to meet the statutory deadline to mail or email the pamphlet to each household in Arizona with a registered voter prior to the beginning of the early voting period pursuant to A.R.S. § 19-123(B).

24. The Arizona Clean Elections Commission also advertises the statutory election deadline for all ballots of 7:00 p.m. on Election Day. (https://www.azcleanelections.gov/how-to-vote/early-voting/vote-by-mail). The Clean Elections Commission has already published its General Election pamphlet with the following statement:

## HOW DO I VOTE?

**Vote Early by Mail**

Ballots will go out in the mail on October 7th to voters that are:
- On the Permanent Early Voting List (PEVL)
- Have requested a one-time early ballot

Voters can mail their voted ballots back by October 27th or drop them off at:
- Designated ballot drop boxes (if available)
- Any early voting location in their county
- The county recorder or elections office
- Any voting location on Election Day in their county (you do not need to wait in line)

**Voted ballots must be received no later than 7:00 p.m. on November 3, 2020 (Election Day).**

https://storageccec.blob.core.usgovcloudapi.net/public/docs/657-VEG_AllDist_English_Website.pdf. The pamphlet will be mailed to every registered household in Arizona

- 4 -

1  pursuant to A.R.S. § 16-956(A)(1) and likely already went to print in order to be delivered
2  by the commencement of early voting.

3  25.   County Recorders publicize the Election Day receipt deadline in other ways.
4  Extending the deadline for some ballots, but not others, would lead to significant confusion
5  among voters regarding which rules apply to them. This confusion would more than likely
6  lead to more ballots being invalidated because some voters who do not qualify for the
7  postmark deadline would nonetheless wait until Election Day to mail their early ballot. In
8  addition, advance information sent out before the election to candidates, political parties,
9  and other individuals has already been distributed, and therefore, would be impossible to
10 change, particularly when the changes would not apply equally to everyone.

11 26.   As part of their voter education efforts, County Recorders have long
12 accounted for the time necessary for a mailed ballot to be returned to the Recorder's office,
13 including accounting for the fact mail must be routed through the Phoenix USPS processing
14 center. County Recorders normally recommend the ballot be mailed at least one week
15 before Election Day, which is October 27, 2020.

16 27.   In cases where there may difficulty to mail back an early ballot, County
17 Recorders recommend that voters return an early ballot to an early voting or Election Day
18 voting location.

19 28.   For example, I am aware of the driving distances set forth by the Plaintiffs in
20 Apache County (Teec Nos Pos, Dennehotso, Ganado, and Rock Point), Navajo County
21 (Kayenta, Pinon, and Shonto), and Coconino County (Cameron, Tonalea, Kaibito, and
22 Navajo Mountain). I have reviewed each County's website and confirmed that each city or
23 town in question will have an early voting site, vote center, or polling place available for
24 the 2020 General Election:

Apache County

*Election Day Polling Places[1]*

- Teec Nos Pos
- Dennehotso
- Ganado (North and South)
- Rock Point

Navajo County

*Early Voting Sites[2]*

- Kayenta: Township Parking Lot
- Pinon: Chapter House Parking Lot
- Shonto: Chapter House Parking Lot

*Election Day Polling Places[3]*

- Kayenta: Old Primary School
- Pinon: Pinon Chapter House
- Shonto: Shonto Prep. School

Coconino County

*Early Voting Sites[4]*

- Cameron, Tonalea, & Kaibeto: Tuba City Elections Office
- Navajo Mountain: Page City Hall

*Election Day Polling Places[5]*

- Cameron: Dzil Libei Elementary School
- Tonalea: Tonalea Senior Citizen Center
- Kaibeto: Kaibeto Senior Center
- Navajo Mtn: Community Arizona Warehouse

29. In an effort to ensure that mail in ballots are received and handled properly by the U.S. Postal Service, the Arizona County Recorders and Arizona Election Officials

---

[1] https://www.apachecountyaz.gov/Elections.
[2] https://navajocountyaz.gov/Portals/0/Departments/Recorder/Documents/2020%20General%20Election%20Early%20Voting%20Sites.pdf.
[3] https://www.navajocountyaz.gov/Portals/0/Departments/Elections/Documents/Important Information/2020%20Vote%20Centers-by%20Precinct.pdf.
[4] https://www.coconino.az.gov/DocumentCenter/View/37870/Early-Voting-Sites-2020-General?bidId=.
[5] https://www.coconino.az.gov/DocumentCenter/View/37948/Coconino-County-Polling-Places-11-03-20-General---FINAL?bidId=.

- 6 -

1  have always worked very closely with the U.S. Postal Service to make sure that all election
2  mail is handled in the most efficient way possible. There has always been an ongoing dialog
3  between these organizations prior to and during the critical election period.

4      30.    Given that UOCAVA ballots are set to be distributed on September 18-19,
5  2020, and early voting begins on October 7, 2020, it is unlikely that County Recorders could
6  make changes to the early ballot instructions before they are distributed.

7      31.    Extending the return deadline for some early ballots would create logistical
8  problems to process the ballots.

9      32.    First, extending the deadline would require County Recorders to tediously
10 identify all ballots subject to the extended deadline. Because the current statutory deadline
11 is uniform throughout Arizona, County Recorders do not presently verify postmarks when
12 determining whether to count an early ballot. For example, in Maricopa County, only a
13 portion of the early ballot envelope is scanned into the County Recorder's computer system
14 for the purpose of conducting a signature verification. The postmark is not scanned and
15 therefore Recorder staff do not have access to the postmark when conducting early ballot
16 verification. Upon verification, the early ballot envelopes are sent to boards staffed by
17 different election workers who open the envelope and remove the ballot for tabulation, but
18 otherwise do not have the capability to review postmarks and/or further conduct
19 verification. Accordingly, it would not be possible to implement an Election Day postmark
20 policy in such a system.

21     33.    Identifying ballots subjected to a different deadline and verifying them
22 accordingly in smaller counties, who may employ a smaller staff, would be extremely labor
23 intensive and difficult.

24     34.    In my experience, even if a County Recorder has the technological capability
25 and personnel resources to efficiently review an early ballot envelope for a postmark,
26 identifying a postmark is not always easy. The possibility of a postmark being smudged or
27 non-existent is very likely, which would leave the voter unaware of the issue. Extending the
28 deadline therefore may actually disenfranchise voters because voters that wait until Election

Day to get their ballot in the mail risk not getting a postmark or getting an unreadable postmark.

35. Moreover, since the geographic boundaries of Native American reservations do not constitute defined electoral jurisdictions for the purposes of federal, state, or local elections, County Recorders do not possess this geographic information in the voter registration database commonly used to verify early ballots. For example, in Maricopa County, the early ballot envelope's bar code is automatically scanned by Maricopa County's vendor. The bar code scan helps locate/identify the elector in the county's voter registration database, allowing the voter's information to appear on the Recorder staff member's computer screen. The staff member then verifies elector's eligibility to cast the early ballot, and if confirmed, the early ballot envelope will be opened and the ballot sent for tabulation. But without geographic information for a Native American reservation in the voter registration system, the Recorder staff member will have no mechanism to confirm whether the voter is eligible to cast a post-Election Day ballot.

36. Counties like Apache County, Navajo County, and Coconino County rely on the Secretary of State's statewide voter registration database known as AVID. It is my understanding that AVID does not contain Native American reservations as electoral jurisdictions, and therefore cannot be utilized to verify whether a voter resides within the geographic boundaries of a reservation.

37. Extending the early ballot return deadline would also impose a number of obstacles in the process of timely verifying and counting ballots.

38. The early ballot verification and tabulation process must take place within a statutorily prescribed timeline to ensure the proper transition of newly elected officials. Pursuant to A.R.S. § 16-642(A), counties have no more than twenty (20) days after the General Election to verify all signatures on all early ballots, process all provisional and conditional provisional ballots, conduct a hand count, and canvass the election. Counties typically finish their statutory processing duties a few days before the canvass deadline.

39. Under current practice, verification of early ballots is typically complete two (2) to four (4) days after Election Day. Therefore, allowing early ballots to be postmarked by Election Day and received by November 13, 2020 would extend the processing timeline at least six (6) to eight (8) days. This delay, standing alone, would threaten a county's ability to meet its statutory duty to canvass within twenty (20) days.

40. Pursuant to the Secretary of State's Election Procedures Manual at pg. 204, all early ballots must be verified by the County Recorder prior to any provisional ballots being verified and tabulated. However, A.R.S. §§ 16-135(D) and 16-584(D) require the County Recorder to verify all provisional ballots within ten (10) days after the election. If a County Recorder must wait until midnight November 13, 2020 to complete early ballot processing, it will be impossible to timely verify the provisional ballots.

41. In addition, A.R.S. § 16-602(F) requires a hand count audit to include early votes. This statute requires that the hand count audit begin within twenty-four hours of the polls closing on Election Day. Therefore, extending the early ballot return deadline will make completion of the above-described ballot verification process difficult because there will be less early ballots available and therefore decrease the reliability of the hand count.

42. Extending the ballot return deadline would also impact the ballot cure period set forth in A.R.S. § 16-550(A). Pursuant to A.R.S. § 16-550(A), if a voter signs a ballot affidavit with a signature that is "inconsistent" with the signature on file, the County Recorder must contact the voter and provide an opportunity to correct the signature. This signature "cure" must occur "not later than the fifth business day after a primary, general or special election that includes a federal office." Thus, extending the election return deadline to November 13, 2020 may not enfranchise more voters because it does not provide these voters with the opportunity to cure any signature matching problems.

43. Based on the above considerations, it is my opinion that Apache, Navajo and Coconino Counties will have difficulty meeting their statutory deadlines to canvass the election. And if any county were to miss its canvassing deadline, the Secretary of State's

deadline to canvass the General Election by November 30, 2020 pursuant to A.R.S. § 16-648(A) could be jeopardized as well.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on this 14th day of September, 2020.

*Helen Purcell* _____

Helen Purcell

# APPENDIX A

# HELEN PURCELL

625 E. Myrtle Ave.
Phoenix, Az. 85020

HELEN PURCELL served as the Maricopa County Recorder from January, 1989 through December, 2016. Born in Topeka, Kansas, she has been a Phoenix resident since 1964.

During her 28 years as the County Recorder, Helen served as President of the Arizona Association of Counties; Board Member of the National Association of Counties, serving as Chairmen of their Program and Services Committee and 4 years as Chairman of the Information Technology Committee; Member of the Board of Advisors of the U.S. Election Assistance Commission, formed as required by the 2002 Help America Vote Act; One of 15 Members of the Technical Guidelines Development Committee, drafting national standards for all voting systems in the country. In April of 2000 her department's Vote –By-Mail technology became part of the Computerworld Smithsonian Collection at the National Museum of American History in Washington, D.C.

Helen previously served on the Board of Directors of the Arizona Bar Foundation for 7 years, serving as President in 2015. She currently serves on the Arizona Supreme Court's Access to Justice Commission, serving since 2017.