Roopali H. Desai (024295)
D. Andrew Gaona (028414)
Kristen Yost (034052)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5478
rdesai@cblawyers.com
agaona@cblawyers.com
kyost@cblawyers.com

Marty Harper (003416)
**ASU LAW GROUP**
111 East Taylor Street, Suite 120
MC8520
Phoenix, Arizona 85004
T: (602) 738-8007
Marty.Harper@asulawgroup.org

*Attorneys for Defendant Arizona Secretary of State*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie; Caroline Begay; Leslie Begay; Irene Roy; Donna Williams; and Alfred McRoye,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State,<br><br>Defendant. | No. CV-20-08222-PCT-GMS<br><br>**DEFENDANT ARIZONA SECRETARY OF STATE'S RESPONSE TO ARIZONA ADVOCACY NETWORK'S MOTION TO INTERVENE** |

Pursuant to Federal Rule of Civil Procedure 7 and Local Rule (Civil) 7.2(c), Defendant Secretary of State Katie Hobbs (the "Secretary") files this response in opposition to the Motion to Intervene ("Motion") filed by the Arizona Advocacy Network ("AzAN") (Doc. 26).

## INTRODUCTION

AzAN belatedly seeks permission to join this litigation to vindicate what amounts to a general policy preference, untethered to the specific issues affecting the Navajo

{00514188.3 }

plaintiffs at the heart of this case. It cannot, and should not, be granted leave to do so under Federal Rule of Civil Procedure 24(a). For one, AzAN's claimed interest is too insignificant to satisfy Article III standing. Indeed, its grievances are unrelated to the core of this action and better resolved through legislative advocacy. Moreover, in the unique context of this time-sensitive election litigation, AzAN's intervention motion is barred by laches and the principles set out in *Purcell* v. *Gonzalez*, 549 U.S. 1 (2006) (per curiam).

Nor does AzAN present any grounds to justify intervention as a matter of this Court's discretion under Rule 24(b). The motion's untimeliness dooms AzAN's case for permissive intervention, just as it does AzAN's case for intervention as of right. And while Rule 24 is not intended to allow intervenors to transform the scope of an existing lawsuit, that is precisely what AzAN seeks to do here by alleging different claims, relying on different evidence, and seeking different relief than Plaintiffs.[1] Allowing AzAN to hijack this litigation will undermine judicial efficiency, delay resolution of this case, and prejudice the Secretary, who seeks to avoid needless distractions as she prepares to oversee a fast-approaching general election in the midst of a global pandemic.

## ANALYSIS

**I.   Mandatory intervention is unwarranted because AzAN lacks a significant protectable interest, failed to timely intervene, and seeks to transform the scope of this litigation.**

An applicant seeking to intervene as of right under Rule 24(a)(2) must show that "(1) it has a significant protectable interest relating to the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately

---

[1]   It is worth noting that counsel for AzAN, is the same counsel who previously represented plaintiffs in the *Voto Latino Foundation v. Hobbs* lawsuit, and who helped broker a settlement that reaffirmed the Election Day ballot-return deadline and ensured increased education to voters regarding the same. By seeking to change the Election Day ballot-return deadline to an Election Day post-marked deadline in this case, it appears that counsel for AzAN is undermining the terms of its prior clients' settlement.

represent its interest." *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (cleaned up). The applicant bears the burden of showing that it meets each requirement. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

### A. AzAN's "interest" is a mere general policy preference for a different ballot-return deadline, which cannot confer standing, let alone warrant intervention.

A significant protectable interest must be "direct, non-contingent, [and] substantial." *In re Weingarten*, 492 F. App'x 754, 755 (9th Cir. 2012); *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). That is not what AzAN advances here. AzAN's interest boils down to a naked preference for a different ballot-return deadline—one that they consider superior as a policy matter. Its operations will be unaffected by the outcome of this litigation; AzAN will need to educate voters on the ballot-return deadline no matter if that deadline remains the same or is changed to a postmark deadline. AzAN thus has no concrete interest in the case, and no standing to litigate in this Court. AzAN's preferred policy is not the subject of this lawsuit, and should not become its focus. Rather, AzAN's ultimate objectives would be better addressed through legislative advocacy efforts to change the statutory ballot-return deadline—not by intervention.

### 1. AzAN lacks a concrete interest and thus lacks standing.

An intervenor of right must establish Article III standing when it seeks new relief beyond what the plaintiff requests. *Town of Chester v. Laroe Estates, Inc.*, — U.S. —, 137 S. Ct. 1645, 1651 (2017). Standing is implicitly addressed in the "significant interest" requirement for intervention. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821, n.3 (9th Cir. 2001); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 904 (9th Cir. 2011) (analyzing standing under the significant protectable interest prong).

A plaintiff seeking to establish standing "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;

and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180–81, (2000). An organization like AzAN suing on its own behalf may establish an injury sufficient to show standing when it has suffered "both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). It may not, however, "manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Id.*

AzAN cannot establish an injury to its resources or mission that would justify intervention. Throughout its motion to intervene, AzAN laments that the Election Day deadline generally "burden[s] and disenfranchis[es] voters, thus frustrating AzAN's mission of enfranchising . . . voters in Arizona." Doc. 26 at 2; *see also id.* at 5–6 (claiming that AzAN would have to divert additional funds and resources to ensure that voters are not disenfranchised by the current deadline or confused by two different deadlines absent statewide relief).

AzAN's injury boils down to a general policy preference for a postmark-based ballot-return deadline. *See also* Doc. 26-1 ¶ 1 (alleging that the "'Election Day Receipt Deadline' has resulted in the disenfranchisement of thousands of lawful, eligible Arizona voters through no fault of their own"). But that does not amount to the kind of concrete, redressable injury to an organization's resources or mission that satisfies the "significant interest" requirement. No matter what deadline is in effect, AzAN will have to spend funds to educate voters. Its expenditures would likely *increase* if the organization had to educate voters about a change in the current deadline, or about a two-part deadline[2] instead of a one-part deadline. And it makes no sense to argue that AzAN would need to "divert resources" from its ordinary activities to educate voters about the current statutory

---

[2] AzAN's preferred version of the deadline would require educating voters about two aspects: 1) their ballot must be postmarked by Election Day, and 2) their ballot must be received within 10 business days of Election Day. *See* Doc. 26-1 at 9.

ballot-return deadline, when its very mission is to educate voters no matter what the deadline is. *See* Doc 26-1 ¶ 4. Indeed, AzAN's mission likely would be frustrated by a change to the ballot-return deadline so soon before the general election; AzAN has presumably already invested funds in educating voters about the Election Day ballot-return deadline, so its efforts to intervene and change that deadline appear to be at cross-purposes with its core mission.

In sum, AzAN cannot show that it possesses any concrete interests to its pocketbook or mission that will be affected absent intervention. For this reason, AzAN fails to establish an injury sufficient to confer Article III standing or, by extension, intervention as a matter of right.

**2.  AzAN's "interest" does not sufficiently relate to the subject matter of this action.**

A potential intervenor's interest in the litigation must not only be significant, but it must also be sufficiently related to the subject of the action. This element is met where resolution of a plaintiffs' claims will affect the proposed intervenor. *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 536 F.3d 980, 984 (2008). If a proposed intervenor's interest is "larger and more generalized" than the one advanced by a plaintiffs, this element cannot be satisfied. *See Warner v. Commissioner of Internal Revenue*, 302 F.3d 1012, 1015 (9th Cir. 2002).

AzAN's ultimate interest in changing the statewide ballot-return deadline is avowedly broader than Plaintiffs'. And its interest in furthering its mission and conserving its finances will not be affected by granting Plaintiffs' requested relief. Accordingly, its only purported interests are not sufficiently "related" to the subject of this action to warrant intervention.

AzAN in no uncertain terms has expressed a desire to change the statewide mail-in ballot deadline for "all Arizona voters." *See* Doc 26-1 ¶ 32. Meanwhile, Plaintiffs seek only to alter the deadline for those who reside on the Navajo reservation. AzAN's requested relief rests on a more generalized concern and is much broader in scope than

Plaintiffs' proposed injunction. AzAN's workload and mission to educate voters of applicable deadlines will not be meaningfully altered if the Court were to grant Plaintiffs requested relief; it thus does not share the kind of relationship with Plaintiffs' suit that merits intervention. *Warner*, 302 F.3d at 1015; *In re Estate of Ferdinand E. Marcos*, 536 F.3d at 984.

### 3. AzAN's "interest" is one for which the appropriate remedy is legislative advocacy or an amicus brief—not intervention.

Proposed intervenors must advance a significant protectable interest. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. United States Dep't of Agriculture*, 143 F. App'x 751 (9th Cir. 2005) (citing *Arakaki v. Cayetano*, 324 F.3d 1478, 1484 (9th Cir. 2003)). AzAN's wish to continue its mission of empowering and educating Arizona voters is not akin to the kind of legally protected interest in property or a contract that courts have found warrants intervention as a matter of right. *See, e.g.*, *Berg*, 268 F.3d at 820 (concluding that contract rights are traditionally protectable interests). Nor does AzAN have a legally protected right to change governing law on behalf of voters at large. *Cf. Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (holding that a legal duty to maintain land amounted to an interest), *overruled on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

For these reasons, AzAN has not shown that it has a significant, protectable legal interest that confers standing to litigate in federal court, or, by extension, a right to intervene in this case. At best, AzAN's interest is simply that of any nonprofit organization with experience in the voting-rights arena. Allowing AzAN to weigh in as an amicus would safeguard that interest. What is certain, however, is that the interest does not amount to the kind of concrete stake that would permit intervention in a case raising issues specific to Navajo voters.

### B. In the unique context of this time-sensitive election case, AzAN's motion is untimely.

Although AzAN's motion should be denied for the reasons detailed above, the Court may also deny it as untimely. Timeliness is a matter "left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Courts typically weigh three factors in considering whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). That said, "[t]imeliness is a flexible concept." *Alisal*, 370 F.3d at 921. While three weeks after the complaint was filed might be timely in an ordinary case, this is a highly time-sensitive election law case filed on the eve of a general election, requiring a context-specific timeliness analysis. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (motion to intervene was untimely in time-sensitive election case where write-in candidate waited to file motion for a month after learning of his alleged injury and two weeks after the relevant write-in nomination deadline).

Unique election-specific timeliness considerations are precisely why courts are careful to avoid altering election rules shortly before an election. This rule—commonly known as the *Purcell* principle—rests on the fact that "court orders affecting elections can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that only increases "as an election draws closer." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (cleaned up). The Supreme Court has repeatedly reaffirmed the *Purcell* principle, including many times just this year. *See, e.g.*, *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205, 1207 (2020) (staying district court injunction extending absentee ballot deadline: "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election"); *Little v. Reclaim Idaho*, No. 20A18, 2020 WL 4360897, at *2 (U.S. July 30, 2020) (Roberts, C.J., concurring in the grant of a stay) (explaining that a district

court's injunction was "all the more extraordinary" for having "disabled a state from vindicating its sovereign interest" in the enforcement of election laws (cleaned up)). These cases make clear that AzAN—moving to intervene mere weeks before the upcoming election and seeking extraordinary relief that would disrupt election procedures—has not acted timely.

Similar considerations lead courts to apply laches to bar dilatory filings in election cases, like AzAN's motion here. *E.g., Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *16 (D. Ariz. Nov. 3, 2016) ("In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice.") (quoting *Lubin v. Thomas*, 144 P.3d 510, 511 (Ariz. 2006)). The two questions critical to the application of laches here are 1) whether AzAN knew the basis of its claims challenging the Election Day deadline sufficiently in advance and thus would've had "ample opportunity" to timely seek pre-election relief, rather than seeking relief on the eve of the election; and 2) whether AzAN has advanced an adequate explanation for its failure to seek relief sooner. *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1181 (9th Cir. 1988).

As to the former inquiry, the Election Day deadline has been the governing law in Arizona for 23 years. Ariz. Laws 1997, 2nd Spec. Sess. Ch. 5 (S.B. 1003). And AzAN has known about the Covid-19 pandemic and the potential changes at USPS for months—well before the now-passed ballot printing deadline. Moreover, AzAN's attorneys filed a very similar lawsuit challenging the Election Day deadline and seeking to impose a postmark deadline on behalf of different organizations in November 2019. *See Voto Latino v. Hobbs*, No. 2:19-cv-05685 (D. Ariz.). As to the latter question, AzAN has provided no explanation—let alone an "adequate" one, *Soules*, 849 F.2d at 1181—for why it only *now* decided to challenge the deadline.[3] As explained below, many election-

---

[3] It is likely that AzAN's Motion was prompted by the request to intervene by the Trump Campaign and Republican parties, which is a concern the Secretary raised in her

administration ships have already sailed.  For example, it is now too late to print mail ballots instructing voters of a different ballot return deadline, or to print the statutorily mandated voter guides informing voters of a changed deadline.  Thus, AzAN's "dilatory filing also diminished the likelihood that [it] can secure meaningful relief," and even if the Secretary and all 15 counties *were* somehow able to notify voters of a change in the deadline, "there is little promise that this belated notice would reassure and encourage [voters] . . . , rather than confuse and dissuade them."  *Arizona Democratic Party*, 2016 WL 6523427, at *17.

In addition to AzAN's unreasonable delay, the Secretary will no doubt be prejudiced if AzAN intervenes and pursues its requested relief so close to the election despite its dilatory conduct.  The remedy AzAN seeks—a postmark deadline that would count ballots as long as they are postmarked by Election Day and received within 10 business days of Election Day—would disrupt the ability of the Secretary and the counties to put on an orderly election; would require governments to incur substantial expenses in an attempt to re-print voter outreach materials and explain discrepancies in already printed materials; and would sow deep confusion among voters in an election year where, due to the pandemic and well-publicized changes at USPS, elections officials already face a Herculean task in disseminating accurate information to voters.  Ballots in all 15 Arizona counties—along with their instructions informing voters of the 7:00 pm Election Day receipt deadline—have already gone to the printer. [Doc. 42-1 Dul Decl. ¶ 13] The ballots had to go to the printer already in large part because the deadline under federal law to mail ballots to military and overseas voters is this Thursday, September 17. [*Id.*] Likewise, Arizona law requires that two types of voter guides—one from the Citizens' Clean Election Commission and one from the Secretary—be delivered to every household with a registered voter before the start of the early voting period on October 7. [*Id.* ¶ 3-

---

opposition to that separate motion to intervene.  Indeed, the Secretary opposes the intervention of all of these political entities, which will only distract from the core issues and convert this straightforward case into a drawn out political fight.

4; Doc. 42-1 Collins Decl. ¶ 8-9] These guides, too, have long since gone to the printer; the Secretary's guide will start being delivered this week, and the Commission's guide next week.  [*Id.*] The unreasonable burdens that AzAN's requested relief would pose warrants a finding of laches.  *See, e.g.*, *Chamness*, 722 F.3d at 1121; *Kay v. Austin*, 621 F.3d 809, 813 (6th Cir. 1980) (relying on laches to affirm denial of injunction to place plaintiff's name on ballot, as plaintiff waited several weeks to sue after learning of alleged injury and printing process for ballots and other materials had already begun).

**II.    Permissive intervention is inappropriate because it is untimely and would radically alter the scope of this case by allowing AzAN to allege different claims, introduce different evidence, and seek different relief.**

An applicant may seek permissive intervention under Rule 24(b) if the applicant "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted).  But a district court may only grant permissive intervention if it assures itself that granting the motion will not "unduly delay the main action" or "prejudice existing parties." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Permissive intervention is committed to the district court's discretion, "subject to considerations of equity and judicial economy." *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990).

**A.    The Court should deny AzAN's motion because it is untimely.**

As with motions for intervention as of right, "a finding of untimeliness defeats a motion for permissive intervention." *United States v. Washington,* 86 F.3d 1499, 1507 (9th Cir. 1996).  "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than with intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (cleaned up).  As explained above, in the unique context of this time-sensitive election case, AzAN's motion is untimely and must be denied.  *See Chamness*, 722 F.3d at 1121.

### B. Rule 24 is not a vehicle for a would-be intervenor to drastically alter an existing case.

Rule 24 "is not intended to allow the creation of whole new lawsuits by the intervenors." *Donnelly*, 159 F.3d at 412 (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)). When the issues a proposed intervenor intends to put forward are "sufficiently different from the issues in the underlying action," permissive intervention should be denied. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002). "Intervenors must take the pleadings in a case as they find them," and intervention is not appropriate where granting the motion would "radically alter [the] scope to create a much different suit." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). But that is exactly what granting AzAN's motion would do here: transform the scope of this litigation by bringing in different claims, evidence, and requests for relief.

AzAN's motion to intervene elides that the similarities between Plaintiffs' claims and AzAN's claims effectively begin and end with the statute being challenged. Plaintiffs allege that under Section 2 of the Voting Rights Act, the Equal Protection Clause, and the Arizona Constitution,[4] the Election Day deadline discriminates against members of the Navajo Nation who reside on-reservation. *See* Doc. 1 at 23–26; Doc. 9 at 5–16. The remedy Plaintiffs seek is to count mail ballots cast by Navajo Nation members residing on-reservation, if they are postmarked by Election Day and received on or before November 13. *See* Doc. 1 at 26 (prayer for relief). In support of their claims, Plaintiffs recite a litany of statistics and anecdotes about the specific challenges uniquely faced by Navajo Nation members residing on-reservation. *See* Doc. 1 at 5–21; Doc. 9 at 1–14.

This is not the case that AzAN seeks to litigate. Instead, AzAN seeks to allege that the Election Day deadline violates the First and Fourteenth Amendments by imposing

---

[4] As explained in the Secretary's Combined Motion to Dismiss and Opposition to Preliminary Injunction, [Doc. 42], Plaintiffs fail to state a claim under the Arizona Constitution. If the Court dismisses that claim, Plaintiffs will have no claims in common with AzAN.

an undue burden under the *Anderson-Burdick* standard and violates the Arizona Constitution. *See* Doc 26-1 at 8–9. And rather than similarly limiting the evidence and the scope of relief sought to just Navajo Nation members residing on-reservation, AzAN instead seeks to have this Court order that mail ballots from any voter anywhere in Arizona be counted as long as their ballots are postmarked by Election Day and arrive within ten business days. Rather than evidence related to the unique challenges faced by Navajo Nation members, AzAN seeks to present evidence regarding the state's interests in having the Election Day deadline weighed against the burden *on all Arizona voters*. *See* Doc 26-1 at 4–9. Given these stark differences, allowing AzAN to intervene would effectively create a "whole new lawsuit," in contravention of Rule 24's requirements. *Donnelly*, 159 F.3d at 412. Far from "taking the pleadings in this case as they find them," AzAN instead seeks to "radically alter the scope" of this case and "create a much different suit." *Wash. Elec.*, 922 F.2d at 97. The Court should deny AzAN's motion in the interest of judicial economy.

## CONCLUSION

For the above reasons, the Secretary respectfully requests that the Court deny AzAN's motion to intervene.

Respectfully submitted this 15th day of September, 2020.

        **COPPERSMITH BROCKELMAN PLC**

        By  s/ Roopali H. Desai
            Roopali H. Desai
            D. Andrew Gaona
            Kristen Yost

        **ASU LAW GROUP**
            Marty Harper

        *Attorneys for Defendant Arizona Secretary of State Katie Hobbs*