IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Katie Hobbs,<br><br>    Defendant. | No. CV-20-08222-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Donald J. Trump for President, Inc., Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Arizona Republican Party, Coconino County Republican Committee, Maricopa County Republican Committee, and Yuma County Republican Committee (collectively, "Republican Movants")' Motion to Intervene (Doc. 12) and Arizona Advocacy Network ("AAN")'s Motion to Intervene (Doc. 26) pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(2). For the following reasons, both motions are denied.

**BACKGROUND**

On August 26, 2020, Plaintiffs Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye (collectively, "Plaintiffs") filed their Complaint against Defendant Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona. (Doc. 1.) The Complaint asserts that Arizona's requirement that vote by mail ballots be received before 7:00 PM on election day ("Receipt Deadline") is an unconstitutional burden on the Navajo Nation's members' right to vote and a violation of

the Voting Rights Act of 1965. *Id.*

On September 2, 2020, Plaintiffs filed a Motion for Preliminary Injunction seeking that Defendant count vote by mail ballots sent by Navajo Nation Members that are postmarked on or before Election Day ("Postmark Deadline"). (Doc. 9.) Subsequently, Republican Movants and AAN filed their respective motions to intervene in this dispute. On September 15, 2020, this Court held a hearing on both motions.

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right and permissive intervention. To intervene as of right under Rule 24(a)(2), a person or entity must show 1) that its application for intervention is timely, 2) that it has a significantly protectable interest relating to property or transaction that is subject of the action, 3) that the disposition may impair or impede its ability to protect that interest, and 4) that its interest is not adequately represented by the existing parties before the Court. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Failure to satisfy one of the requirements is fatal to the application. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Rule 24(b) governs permissive intervention. An applicant must demonstrate: "'(1) independent grounds for jurisdiction; (2) [that] the motion is timely; and (3) [that] the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002)). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### II. Analysis

#### A. AAN's Motion to Intervene

##### 1. Intervention as of Right

As it is dispositive to the question of whether AAN can intervene as of right under

Rule 24(a)(2), the Court addresses only whether AAN has a significantly protectable interest relating to the subject of this action. To demonstrate a significantly protectable interest, a prospective intervenor must establish that their interest is protected under some law and that there is a "relationship between the legally protected interest and the claims at issue." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). The relationship between a proposed intervenor's interest and the claims at issue must be close enough that intervention does not "radically alter" the scope of the present suit. *See Wash. Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (9th Cir. 1990). Rule 24 is not intended to "allow for the creation of whole new suits by intervenors." *Id.*

Here, intervention would "radically alter" the scope of the present suit. Plaintiffs seek to enjoin the Receipt Deadline for Navajo Nation members living on-reservation only, while AAN seeks to enjoin the Receipt Deadline for *everyone* in Arizona. (Doc. 26 at 6.) Not surprisingly they seek relief under separate legal theories. Plaintiffs bring claims under section 2 of the Voting Rights Act, and equal protection claims under both the state and federal constitutions arising from their alleged unequal treatment as Native Americans. AAN's suit asserts that Arizona is placing an undue burden on the fundamental right to vote of all Arizona citizens in violation of the state and federal constitutions. If AAN is permitted to intervene, this Court would not only have to determine whether the Receipt Deadline violates the equal protection rights of Navajo Nation members under both the state and federal constitution but also whether the Receipt Deadline violates the fundamental rights of all Arizona citizens under the state and federal constitutions . (Doc. 26-1.)

Furthermore, it is not clear AAN's interests would be sufficiently impacted by the outcome in this suit. "The relationship requirement is met if the resolution of the plaintiff's claims *actually will affect* the applicant." *S. Cal. Edison Co.*, 307 F.3d at 803 (emphasis added). It is not clear that the resolution of Plaintiffs' claims either way would affect AAN's subsequent ability to seek the relief that it does in any future action. Further, AAN asserts Plaintiffs' proposed remedy will impact them because, as an organization that

advocates for voting rights, AAN will have to expend further funds to educate voters on what voting deadline applies to them. (Doc. 26 at 5–6.) However, AAN already expends funds on educating voters about voting deadlines. *Id.* at 5. Therefore, it does not appear that resolution of Plaintiffs' claims would make a meaningful difference in AAN's voter education efforts. Accordingly, intervention as of right is denied.

### 2. Permissive Intervention

In the alternative, AAN argues permissive intervention should be granted. It is however, unclear that the basis for AAN's intervention really presents a common question of law or fact. AAN's intervention would significantly alter the scope of this suit. Such an alteration would unduly complicate and delay this already time-sensitive proceeding. *See Wash. Elec. Co-op, Inc.*, 922 F.2d at 98 (upholding a district court's denial of permissive intervention where the proposed intervenor would have introduced new issues). In addition, AAN has had plenty of time to bring their claims. Arizona's Receipt Deadline has been in place for 23 years. Ariz. Laws 1997, 2nd Spec. Sess. Ch. 5 (S.B. 1003). AAN has also had months to be aware of the negative impacts that the COVID-19 pandemic and possible changes to the United States Postal Service could have on voting rights. In light of the delay AAN's intervention would cause and the ample time AAN has had to bring a similar suit, the Court denies permissive intervention.

### B. Republican Movants' Motion to Intervene

### 1. Intervention as of Right

As it is dispositive to the question of whether the Republican Movants can intervene as of right under Rule 24(a)(2), the Court addresses only whether the existing parties will adequately represent the Republican Movants' interests in this lawsuit. "Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary." *Perry*, 587 F.3d at 951. Courts consider three factors in assessing the moving party's showing:

> (1) Whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id.* at 952.

Here, Defendant's ultimate objective is to defend the Receipt Deadline. (Doc. 22 at 4.) The Republican Movants concede that they share this objective in the short-term but contend that their ultimate objective is to elect Republican candidates and protect Republican voters. (Doc. 38 at 6.) Despite this characterization, the subject of this lawsuit is defending the Receipt Deadline. If the Republican Movants believe, as they apparently do, that defending the deadline is in their interest, they certainly have an interest in this lawsuit, but still have not established a different objective than the Secretary of State. *See, e.g.*, *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (finding the same ultimate objective where both parties sought to uphold the constitutionality of the challenged statutes); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (finding the same ultimate objective where both parties sought to uphold Proposition 187). Therefore, the Republican Movants must make a compelling showing of inadequate representation.

The Republican Movants argue Defendant does not adequately represent their interests because Defendant's viewpoint on certain issues diverges from theirs. The Republican Movants point out that Defendant recently asked the Arizona Attorney General to investigate the Trump administration's proposed changes to the U.S. Postal Service, speculated on Twitter about whether President Trump conspired to violate an Arizona law, and took a divergent view of the Voting Rights Act in a separate case. (Doc. 12 at 8.) Additionally, the Republican Movants point out that Defendant, as Secretary of State, is not in the position to represent the narrower interests of Republican candidates. (Doc. 38 at 6.) None of the above, however, call into question her sincerity, will or desire to defend the Receipt Deadline. Although these examples demonstrate that Defendant does not share the exact stances of the Republican Movants, none of these examples specifically

contradict Defendant's intention to defend the Receipt Deadline. *See Perry*, 587 F.3d at 954 (explaining that failure to defend a dispute in the same "exact manner" is not sufficient to rebut the presumption of adequate representation).

In addition, the Republican Movants point to *Voto Latino Found. v. Hobbs*, No. 2:19-cv-05685-DWL (D. Ariz.) and *Navajo Nation v. Hobbs*, 3:18-cv-08329-DWL (D. Ariz.), cases Defendant settled, to argue Defendant is sympathetic to Plaintiffs' cause. In the *Voto Latino Found.* settlement, a case where the plaintiffs also sought a postmark deadline, Defendant committed to discussing the feasibility of a postmark deadline after this upcoming election day. (Doc. 57 at 7.) Although this commitment indicates a *potential* willingness to consider a postmark deadline in the future, this is not a compelling showing as Defendant filed several motions to dismiss and opposed plaintiffs' motion for summary judgment in that case. Further, the settlement resulted in an unchanged Receipt Deadline. Additionally, the Republican Movants' reference to *Navajo Nation* is not compelling as that case did not concern Arizona's postmark deadline. Neither example presents a compelling showing that Defendant will not vigorously defend the postmark deadline in this case.[1]

Relying on *Sw. Ctr. for Biological Diversity*, the Republican Movants argue that a showing of divergent interests overcomes the presumption of adequacy. (Doc. 38 at 7.) In *Sw. Ctr. for Biological Diversity*, a construction company and several building associations moved to intervene in a case involving a challenge to certain conservation plans. 268 F.3d at 815. The conservation plans at issue were created by the collaboration of government and private stakeholders. *Id.* In opposing intervention, the City of San Diego argued it shared the same ultimate objective with the intervenors because both defended the conservation plans. *Id.* at 823. The court reasoned that even if the parties shared the same objective, and the presumption applied, the resumption would be rebutted because the parties did not have "sufficiently congruent interests." *Id.* The City of San Diego admitted

---

[1] Republican Movants argue that Defendant's commitment to reach an early settlement in this dispute undermines her argument that she will vigorously defend the Receipt Deadline. (Doc. 38 at 6.) However, Defendant's recently filed Motion to Dismiss Plaintiffs' claims says otherwise. (Doc. 42.)

1  it could not represent the intervenors' interests in the action because the City's
2  considerations in development were different than those of private developers. *Id.* Based
3  on these differences in interest, the court explained that "[j]ust as the City could not
4  successfully negotiate the [conservation plans] without some private sector participation
5  from [the intervenors], so too the City in this case cannot be expected successfully to
6  safeguard [the intervenors'] legally protectable interests." *Id.*

7  The same circumstances do not exist here. Unlike the City of San Diego, Defendant
8  does not state that it will not represent the Republican Movants' interests in this dispute.
9  Furthermore, simply defending the constitutionality of a law is different than defending a
10 multi-faceted plan consisting of public and private interests. Defendant is more than
11 capable of defending the constitutionality of the Receipt Deadline without the Republican
12 Movants' assistance. Accordingly, the Republican Movants fail to rebut the presumption
13 of adequate representation.

**2. Permissive Intervention**

15 In the alternative, the Republican Movants argue permissive intervention should be
16 granted. The Republican Movants' request meets the three basic elements of permissive
17 intervention under Rule 24(b). However, equitable considerations also counsel against
18 permissive intervention here. As previously discussed, the Republican Movants' interests
19 are more than adequately represented by Defendant in this lawsuit. *See Cal. v. Tahoe Reg'l*
20 *Plan. Agency*, 792 F.2d 775, 779 (9th Cir. 1986) (upholding a district court's denial of
21 permissive intervention where the court found that the proposed intervenor's interest was
22 adequately represented). As Defendant seeks the exact same objective as the Republican
23 Movants, the Republican Movants' intervention would unnecessarily delay this time-
24 sensitive proceeding. Importantly, it is well within Defendant's function as the public
25 official in charge of elections to resolve this dispute on her own.

26 At the same time, the Court recognizes the Movants' concern about a potential
27 settlement agreement harming their interests. In recognition of this concern, if the parties
28 enter into a settlement agreement, the Court will require the parties to circulate the

agreement. Additionally, the Court will deny the Movants' Motions without prejudice so that the Movants may seek intervention if a potential settlement violates their rights under the law.

## CONCLUSION

AAN's request to intervene as of right and on permissive grounds is denied without prejudice. In addition, the Republican Movants' request to intervene as of right and on permissive grounds is denied without prejudice.

Accordingly,

**IT IS THEREFORE ORDERED** that Arizona Advocacy Network's Motion to Intervene (Doc. 26) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Donald J. Trump for President, Inc., Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, Arizona Republican Party, Coconino County Republican Committee, Maricopa County Republican Committee, and Yuma County Republican Committee's Motion to Intervene (Doc. 12) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Court will hold a telephonic status conference with the parties regarding the September 22, 2020 hearing on **Friday, September 18, 2020 at 10:30 a.m. Mountain Standard Time (Pacific Daylight Time)** to discuss Daubert Motions and how to proceed with the hearing.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall set up a call-in number on or before **Noon on Thursday, September 17, 2020** and disseminate it to all parties, including the Court.

**IT IS FURTHER ORDERED** setting an expedited briefing schedule as follows:

1. Defendant's Daubert Motion shall be filed no later than **Friday, September 18, 2020**.

/ / /

/ / /

2. Responses to Defendant's Daubert Motion shall be filed no later than **Monday, September 21, 2020**.

Dated this 16th day of September, 2020.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge