Chris McClure
McClure and Hardy Prof. LLC
SD Bar No. 3962
101 S. Reid St. Ste. 307
Sioux Falls, SD 57103
605-496-9858
mcclurechris@gmail.com

Michael J. Novotny
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South Bellevue, NE 68005
AZ State Bar No. 033792
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
Email: mnovotny@bigfirelaw.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams and Alfred McRoye<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | Case No. 3:20-cv-08222-GMS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF JEAN SCHROEDEL AND BRET HEALY AND OPPOSITION TO MOTION IN LIMINE TO EXCLUDE TESTIMONY AT PRELIMINARY INJUNCTION HEARING** |

Defendant's Motion to Strike the Declaration of, and preclude the testimony of, Dr. Jean Schroedel and Mr. Bret Healy should be denied.

## I.     INTRODUCTION

The testimony of Dr. Schroedel and Mr. Healy will be offered to educate the court on the relationship between voting-by-mail and electoral participation among populations with non-standard mail service, in this case the Native American population residing on the Navajo Nation Reservation.  Defendant seeks to have the aforesaid testimony excluded under Daubert and its progeny based on allegations that 1) the Expert Report does not meet the requirements under Fed.R.Civ.Pro. 26(a)(2), 2) the Declaration is unreliable, unhelpful and irrelevant to the trier of fact, 3) the witnesses are unqualified, and 4) the testimony has no probative value.  Defendant is wrong on every count.

First, Defendant misstates the legal standard to be applied by the Court in assessing technical expert qualifications; misunderstands the depth and breadth of Dr. Schroedel and Mr. Healy's experience, academic and otherwise; and misconstrues the methodology used to prepare the Declaration provided as part of Plaintiffs' Complaint and Request for Preliminary Injunction.

Rule 702 allows a witness to be "qualified as an expert by knowledge, skill and experience, training or education." Fed.R.Evid. 702.  As demonstrated herein, Dr. Schroedel and Mr. Healy's knowledge, research, and experience in Native American voting and access to voting issues, make them uniquely suited to assist the Court.

## II.     SCHROEDEL AND HEALY ARE QUALIFIED

### A.  Dr. Jean R. Schroedel

Jean R. Schroedel, Ph.D. is professor emerita of political science at Claremont Graduate University (an all-graduate research university) where she taught classes on American political development, voting rights, women and the law, women and policy, Congress, and

policymaking.  Dr. Schroedel earned her doctorate in political science from the Massachusetts Institute of Technology.  Before her appointment at CGU, Schroedel spent two years as an assistant professor at Yale University.  She is well published, has earned academic awards and accolades including the prestigious Victoria Schuck Award from the American Political Science Association. Moreover, Dr. Schroedel's research has been recognized by the Western Political Science Association, among others.

Dr. Schroedel has authored and co-authored extensive numbers of books and journal articles.  In the past ten years, Dr. Schroedel has published seven journal articles specifically directed to voting rights issues affecting Native Americans in peer reviewed journals. Most recently, Dr. Schroedel co-authored "Assessing the Efficacy of Early Voting Access on Indian Reservations:  Evidence from a Natural Experiment in Nevada" published in the periodical *Politics, Groups and Identities*. A true and correct copy of this article is attached as Exhibit A to the Declaration of Chris McClure and filed herewith.  Dr. Schroedel is also author of a recent book titled *Voting in Indian Country – The View from the Trenches*, University of Pennsylvania Press, 2020, this book was similarly subject to the per review process.

In addition to her scholarly writings, Dr. Schroedel has a strong record of receiving funding, subject to the review process; her research has been supported by grants from major foundations including the Haynes Foundation, Lear Foundation, Bradshaw Foundation, Irvine Foundation, Fletcher Jones Foundation and Russell Sage Foundation.   Dr. Schroedel has spent much of the past several years researching the impact of the Voting Rights Act on the ability of Native Americans to have meaningful access to the ballot box and has been involved in several voting rights cases including offering expert testimony in the case of *Wandering Medicine v. McCulloch*, U.S. District Court, Montana, Billings Division, No. 12-cv-135, which was based on a violation of Section 2 of the VRA.

Most recently, in Spring 2020, Dr. Schroedel, working with colleagues and graduate students at the Claremont Graduate University, began developing plans for a series of related research articles examining whether voting-by-mail had any impact on electoral participation among populations with non-standard mail service. They reached out for potential financial support months before this case was initiated and reached out to Four Directions to serve as collaborators and partners. True and correct copies of the aforesaid communications dated July 5, 2020 are attached as Exhibit B to the Declaration of Chris McClure filed herewith. It is worth noting that Dr. Schroedel has had a relationship with Four Directions dating back to January 2014, and this relationship and has resulted in numerous publications, unrelated to any litigation. On July 20, 2020, Dr. Schroedel provided the following outline of her research to Claremont Graduate University's development office for use in fund raising:

> For our second part, the real time experiment, we test how long it takes for mail sent from six postal locations on the Navajo Reservation on the three Arizona counties (Apache, Navajo and Coconino Counties) to reach county election official offices compared to the time that it takes for mail sent from urban, largely white cities in those counties to arrive. The test will involve the mailing of different classes of mail (first class mail, first class certified, priority mail and priority express mail; all of which have different prices, ranging from 55 cents to at least $26.35 and promise to deliver the mail within 1-5 days, 2-3 days or 1-2 days. While not completely comparable to the service provided during the rush of mail during elections, it will provide us with a general sense of how long it takes for mail to go either from election offices, as occurs with the sending of absentee ballots and the time that it takes for ballots to go from reservation postal service locations to the election officials' offices. We also are recording the price of gasoline at the gas stations nearest to the post offices, at both reservation and urban locations, since this also is part of the relative cost of voting for the two populations.

A true and correct copy of the letter from Claremont Graduate University to the Russell Sage Foundation is attached to the Declaration of Chris McClure as Exhibit C (hereafter "CGU Letter"). The CGU Letter also includes a detailed analysis of the methodology to be utilized in the proposed

research, most of which also formed the basis for the Declaration of Jean Schroedel and Bret Healy (hereafter "Expert Report") submitted by Plaintiffs' in this case.

## B. Mr. Bret Healy

Mr. Bret Healy is being offered as an expert in area of registering and helping tribal members to vote by identifying obstacles which impact the ability of tribal members to effectively cast a ballot in state and federal elections, in Indian Country, and developing solutions to those obstacles. Mr. Healy has a long history of testifying in a variety of Section 2 voting rights cases including:

- *Brooks v. Gant*, No. U.S. District Court, South Dakota, Western Division, 12-cv-05003
- *Wandering Medicine v. McCulloch*, U.S. District Court, Montana, Billings Division, No. 12-cv-135
- *Sanchez v. Cegavske*, U.S. District Court, Nevada, No. 16-cv-00523

Mr. Healy offered expert testimony in the *Wandering Medicine v. McCulloch* case. Mr. Healy served as the primary witness for Plaintiffs in the *Sanchez* case referenced above. In the Court's order finding a violation of Section 2 of the VRA, Judge Du specifically stated that "Healy offered testimony about his extensive experience helping various tribes register to vote and establish early and satellite voting locations in Indian Country. The Court agrees that Healy's depth of experience may qualify him as an expert on registering and helping tribal members to vote." *Sanchez v. Cegavske*, No. 16-cv-00523, Order, Slip op., at 7 (D. Nev. Oct. 7, 2016). Mr. Healy has been effective in all facets of Native American voter access, including Get Out the Vote activities, voter registration, voter protection, voter access, and voting rights in six states. Mr. Healy was instrumental in establishing no fewer than 44 early voting locations, on reservation, by the 2016 election.

In addition to testimony provided for the above Section 2 cases, Mr. Healy wrote the Native access portion of South Dakota Help America Vote Act, as revised in 2014. He has

been a consultant on voting rights/voting access issues to a variety of tribal regional organizations including but not limited to the Inter-Tribal Council of Nevada, Great Plains Tribal Chairman's Association, Coalition of Large Tribes and Rocky Mountain Tribal Leaders. Additionally. Mr. Healy has been a voting rights/access consultant to the following federally recognized Tribes: Pyramid Lake Paiute Tribe, Walker River Paiute Tribe, Yerington Paiute Tribe, Oglala Sioux Tribe, Rosebud Sioux Tribe, Crow Creek Sioux Tribe, Cheyenne River Sioux Tribe, Blackfeet Nation, Fort Belknap Indian Community, Northern Cheyenne Tribe, White Earth Nation, Red Lake Nation and Leech Lake Band of Ojibwa.

Mr. Healy is clearly viewed as an expert in voting issues in Indian Country by those that are intimately involved with that field of knowledge and experience.

### C. Methodologies

Two widely accepted basic social science research methods texts can be used to explain the "reliable principles and methods" utilized in demonstrating the causal relationship that lies at the heart of the underlying research included as part of the Expert Report. McKechnie, L. (2008). Observational research. In L. M. Given (Ed.), *The SAGE encyclopedia of qualitative research methods* (pp. 573-575). Thousand Oaks, CA: SAGE Publications, Inc. doi: 10.4135/9781412963909 (Hereafter "McKechnie"); Guthrie, G. (2010). *Basic research methods: An entry to social science research*. Thousand Oaks, CA: SAGE Publications, Inc. (Hereafter "Guthrie'). The general principles discussed within McKechnie and Guthrie are widely applicable to a great number of scenarios and are the basics of standard research process utilized in all research methodologies. The research utilized in the Expert Report can be classified in several different ways. While it is exploratory research in that the study of mail service delivery times on and off-reservation has not been studied previously, it is also observational research in that it involves "collecting impressions of the world…in a systematic and purposeful way" and utilizes

an "emergent research design moving back and forth between inductive and deductive reasoning". McKechnie at 574-575. It is also applied research in that it is "concerned with topics that have potential for practical application" and "keeps in mind a particular way of implementing the results". Guthrie at 5. It is also an explanatory research design in that attempts to explain documentable phenomenon existing in the outside world.

According to David De Vaus, "[e]stablishing causal relationships is at the heart of explanatory research design." De Vaus, D.A. (2001). *Research design in social research*. Thousand Oaks, CA: SAGE Publications, Inc at 34 (Hereafter "De Vaus"). Since researchers can rarely actually empirically observe the phenomenon producing change in another, they must rely upon the inference of a relationship. According to De Vaus, "[c]ausal relationships must therefore be inferred rather than observed. *The purpose of research design in explanatory research is to improve the quality of our causal inferences."* De Vaus at 34 (*emphasis added*). In the study that was included in the Expert Report, the data (mail delivery speeds) was unknown prior to the beginning of the study, therefore a probabilistic research design was utilized wherein the analysis was attempting to establish probabilistic causality. A precondition for establishing this type of causal relationship is determining the relationships of $(XY_1)$ and $(XY_2)$. If X causes Y then subjects who differ from each other on X should also differ from each other on Y. The analytical information contained in the Expert Report is part of an ongoing project, and therefore incomplete, however the preliminary data demonstrates a causal relationship. Those who live on the reservation have a different mail service delivery speed than those who live off the reservation, a pre-condition for a causal relationship is met.

To further demonstrate a causal relationship, De Vaus suggests variables must relate on three levels: Time Order, Dependent Variable Capacity to Change, and Theoretical Plausibility. De Vaus pages 35-36. With respect to Time Order, the cause of the change must come before the

effect of the change. In this case, living on the reservation must come before slower mail delivery speeds. The Expert Report demonstrates that this does occur as those living off the reservation have faster mail delivery speeds. On the matter of the Capacity of the Dependent Variable to Change, the effect (dependent variable) must be the only variable capable of change. In other words, the relationship only works in one direction, i.e. living on the reservation (independent variable) leads to slower mail delivery speeds (dependent variable). The relationship makes no sense if you reverse the variables, as in slower mail delivery speeds lead to living on a reservation. Only one variable, the dependent variable is capable of change.

Finally, with respect to Theoretical Plausibility, this simply means that the causal assertion that the researcher is attempting to make must make sense. This does not require that the researcher knows how 'X affects Y', rather, the researcher only needs a plausible theory. In academic research, previous or similar research in the same or related areas is often relied on, in addition to commonly accepted theories, which all combine to provide the substance of that plausible causal relationship. The Expert Report outlines that research as well as the most relevant theories with a standard literature review, the common method used in Political Science. Such literature reviews are more than simple "background information" or "internet surveys" as the Defendant implies. The Schroedel/Healy preliminary research demonstrates that the relationship at the heart of their analysis, exists and that the causal relationship is supported by standard and accepted practice. The issue of slow mail delivery service therefore cannot be overlooked when discussing the issue of the delivery of ballots to and from the reservation.

### III.     LEGAL ANALYSIS

The primary motivation for acceptance of an expert report is if that information can assist the Court in understanding information that is technical and not readily available or understood. This case centers on Plaintiffs' assertion that voting access in Indian Country is

hampered by different circumstances that are not generally known, realized, or managed and certainly not by the election system of the State of Arizona. The Declaration and testimony of Dr. Schroedel and Mr. Healy provide a specific insight and analysis into the difficulties faced by Native American voters from the perspective of two individuals who have been working in the trenches for nearly a decade each. Clearly, Dr. Schroedel and Mr. Healy are particularly well suited to be helpful to the Court when considering Plaintiffs' case. Defendant's motion should be denied.

## A. The General Substance of Rule 26(a)(2) has Been Met

To assert that Dr. Schroedel and Mr. Healy were not properly disclosed pursuant to Fed.R.Civ.Pro. 26(a)(2) is merely a bald attempt to keep out relevant and damaging testimony. The Expert Report was included with the Emergency Motion for Preliminary Injunctive and Declaratory Relif and Memorandum of Points and Authorities in Support Thereof filed herein. Any assertion that Defendant was not aware of the substance of the Expert Report, or that same was lacking in background information is invalid; Defendant has had knowledge of Dr. Schroedel and Mr. Healy from the case's inception.

Rule 26(a)(2) sets forth the requirements for disclosure of expert witness identification and testimony. Section 26(a)(2) requires that a party identify an expert witness that may be used at trial, if a report is written it is to include a statement of opinions, the facts or data considered and the witnesses' qualifications. The Expert Report was not intended to be a fully developed Expert Report pursuant to Rule 26 given that the case is in its infancy. While there might exist deficiencies, the Expert Report/Declaration was provided at the earliest possible moment, and any minor deficiencies should not preclude the Court from considering the Expert Report or preclude either individual from testifying at preliminary injunction whereat Defendant can cross-examine the witness and obtain any relevant information necessary.

## B. Plaintiffs Experts, and their Declaration, Are Admissible

### 1. The Daubert Standard for Admissibility Is Applied Flexibly

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony in the federal courts, under the following parameters:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Rule 702 affords a court wide latitude to admit expert testimony that is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (expanding Daubert's flexible application to technical expert testimony); *Daubert*, 509 U.S. at 588; *See Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) ("For an expert's testimony to be admissible . . . it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."). "If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998) (reversing exclusion of scientific medical testimony when court improperly ignored expert's reliance on scientific journals and when expert's conclusions were based on reasoning and methodology "of the kind traditionally used by rheumatologists.").

The Rule 702 standard is applied even more flexibly when the Judge is the trier of fact. "*Daubert* is meant to protect juries from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate

when the gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir 2018) (*quoting David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (quotations omitted from original) (emphasis in original); *see also FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial." *(quotation omitted)*); *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) (Daubert "barriers are even more relaxed in a bench trial situation."); *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."). Additionally, at a bench trial, the court has the ability to make its reliability determination during or even after testimony rather than in advance of trial. The court commits no error by admitting the evidence subject to the ability to later disregard it if deemed unreliable. *Flores*, 901 F.3d at 1165; *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)..

Rule 702 provides a flexible standard for admitting technical or non-scientific expert testimony. *See Daubert*, 509 U.S. at 588 (Federal Rules of Evidence have a "liberal thrust;" including "general approach of relaxing the traditional barriers to 'opinion' testimony."); *Jinro Am., Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2000); 4 Weinstein's Federal Evidence § 702.01[1] (Supp. 2002) ("Expert testimony is liberally admissible…"). In *Kumho Tire*, the Supreme Court expanded *Daubert's* flexible principles to "testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. The same standard applies to both of Plaintiffs' expert's qualifications. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (Rule 702 "contemplates a broad conception of expert qualifications."); *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (liberal admissibility of expert testimony under Daubert extends to expert qualifications). The Supreme Court observed in *Kumho*

*Tire* that *Daubert's* listed criteria are only suggestions and may not be applicable to all expert fields. *See Kumho Tire Co.*, 526 U.S. at 1999 ("In other cases, relevant reliability concerns may focus upon personal knowledge or experience.").

An expert's familiarity with the specific field in question goes to the weight rather than the admissibility of the testimony. *See, e.g.*, *United States v. Abonce-Barrera*, 257 F.3d 959, 964 (9th Cir. 2001) ("in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally"); *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (an expert's "lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert"). Still, "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" for the opposing party to attack admissible evidence. *Daubert* 509 U.S. at 596.

Finally, there is extensive caselaw that finds that the practical experience in an area of expertise is sufficient to qualify a potential witness as an expert. *United States v. Baker*, 930 F.2d 1408, 1411 (9th Cir. 1991) (finding trial court properly admitted expert testimony when expert educated was different from experience in relevant job function); *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000) (extensive academic and practical experience sufficient to qualify as expert).

2.  Witnesses Are Helpful to the Court.

Both Dr. Schroedel and Mr. Healy possess unique and relevant qualifications that relate directly to claims asserted by Plaintiffs in the instant action. Plaintiffs' claims, which relate to voter access and the difficulties experienced in Indian Country, are precisely the types of information that both Dr. Schroedel and Mr. Healy have been intimately involved with and have studied for nearly a decade. Schroedel and Healy are precisely the type of person who can assist

the Court in understanding and reviewing this specialized and intricate relationship between voter access and Indian Country.

Dr. Schroedel is a highly respected academic, who has numerous published journal articles and books that are directly related to Native American voter access. Dr. Schroedel has been accepted as an expert in another voting rights case. Her ongoing research is directly on-point with Plaintiffs cause of action, however the research was *not* conducted in order to support Plaintiffs action, but rather, Plaintiffs were fortunate that a researcher of Dr. Schroedel's caliber was already in the process of investigating the relevant voting situation.

Similarly, Mr. Healy has been working tirelessly to support the voting rights of Native Americans. Mr. Healy has been effective in all facets of Native American voter access, including Get Out the Vote activities, voter registration, voter protection, voter access, and voting rights in six states. Mr. Healy's activities were instrumental in establishing 44 early voting locations, on reservation, in the 2016 election.

It is undisputed that both Dr. Schroedel and Mr. Healy have relevant technical and practical experience which will assist the Court in its evaluation and analysis of Plaintiffs' cause of action.

3. The Probative Value of the Expert Report and Testimony is High.

The underlying assertion made by Plaintiffs is that the existing vote by mail system in Arizona violates Section 2 of the Voting Rights Act of 1965 in that it provides less opportunity for Navajo Nation Residents to participate given the variety of discriminatory factors involved, including but not limited to, less access to mail and slower delivery times. Dr. Schroedel and Mr. Healy have both been intimately involved with Native voter access. Dr. Schroedel has authored a number of scholarly writings and books on the barriers to voting in Indian Country, generally, and this subject in particular. The Expert Report was excepted from recent analysis and ongoing

research being conducted on this topic.  Plaintiffs assert that he probative value of the Expert Report is high and comprised of information not readily available to the public at large and directly relevant to understanding the basis for Plaintiffs' allegations of discrimination and unequal voter access.

Moreover, given that the Expert Report contains vast amounts of supporting facts therein, there should be little concern that the testimony would be asserting unsupported and conclusory opinions.  Rather, given the types of information collected and the volume of technical information included in the Expert Report, there is a strong need for someone to assist the Court to focus in on the most salient facts and analysis as they relate to the Section 2 claims.  Either Dr. Schroedel or Mr. Healy would be well suited to this task and particularly useful for the Court's analysis.  Defendant's motion should be denied.

## III.    CONCLUSION

For all of the forgoing reasons, the caselaw and facts support the denial of Defendant's motions.

Dr. Schroedel and Mr. Healy are qualified to provide this Court with expert testimony about the facts that are well beyond "everyday experience." The Court's understanding of the issues in dispute is best served by the Court hearing their testimony and, thereafter, weighing its benefits to the issues being adjudicated.

Dated this 21st day of September 2020.　　　　 /s/ Chris McClure
　　　　　　　　　　　　　　　　　　　　 Chris McClure
　　　　　　　　　　　　　　　　　　　　 McClure and Hardy Prof. LLC
　　　　　　　　　　　　　　　　　　　　 SD Bar No. 3962
　　　　　　　　　　　　　　　　　　　　 101 S. Reid St. Ste. 307
　　　　　　　　　　　　　　　　　　　　 Sioux Falls, SD 57103
　　　　　　　　　　　　　　　　　　　　 605-496-9858
　　　　　　　　　　　　　　　　　　　　 mcclurechris@gmail.com

/s/ Michael J. Novotny_____
Michael J. Novotny
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South
Bellevue, NE 68005
AZ State Bar No. 033792
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
Email: mnovotny@bigfirelaw.com

ATTORNEYS FOR PLAINTIFFS