# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Yazzie, et al., | No. CV-20-08222-PCT-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, | |
| Defendant. | |

Pending before this Court is Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye (collectively, "Plaintiffs")' Motion for Preliminary Injunction (Doc. 9) and Defendant Katie Hobbs ("Defendant")' Motion in Limine (Doc. 51). For the reasons stated below, Plaintiffs' Motion for Preliminary Injunction is denied and Defendant's Motion in Limine is denied.

## BACKGROUND

On the Navajo Nation reservation in Arizona, several variables make voting by mail difficult. Most Navajo Nation residents do not have access to standard mail service, meaning most do not have access to home delivery and must travel to retrieve their mail. (Doc. 9-3 at 15.) Lack of home delivery, combined with the lengthy distance many Navajo Nation residents have to travel to reach a post office and socioeconomic factors that make travel burdensome, makes accessing the postal service challenging for many Navajo Nation residents. *Id.* 15–16.

In Arizona, voters can opt to vote by mail. Arizona law provides that vote by mail

1  ballots "must be received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day" ("Receipt Deadline"). A.R.S. § 16-548(a). Plaintiffs, whom are registered voters and enrolled members of the Navajo Nation living on-reservation, oppose the Receipt Deadline because they argue that the postal service and other circumstances on the reservation makes it harder for Navajo Nation residents to meet the Deadline. (Doc. 9.)

Plaintiffs filed their Complaint on August 26, 2020. The Complaint asserts that the Receipt Deadline violates Section 2 of the Voting Rights Act, the equal protection clause of the United States Constitution, and Article 2, Section 21 of the Arizona Constitution. (Doc. 1.) On September 2, 2020, Plaintiffs filed a Motion for Preliminary Injunction seeking that Defendant count vote by mail ballots sent by Navajo Nation members living on-reservation that are postmarked on or before Election Day ("Postmark Deadline"). (Doc. 9.) Defendant subsequently filed a Motion in Limine, objecting to a declaration submitted with Plaintiffs' Motion for Preliminary Injunction and to testimony Plaintiffs intended to offer at the hearing on Plaintiffs' Motion. (Doc. 51.) On September 22, 2020, this Court held an evidentiary hearing on Plaintiffs' Motion.

## DISCUSSION

### I. Legal Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A plaintiff seeking a preliminary injunction must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without an injunction; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (internal citation omitted); *see also Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) ("[M]andatory preliminary relief is subject to heightened scrutiny.").

**II.    Analysis**

In support of their request for a preliminary injunction, Plaintiffs claim the Receipt Deadline violates section 2 of the Voting Rights Act and their rights under the federal and state constitutions. Plaintiffs must show they are likely to succeed on these claims or at least raise serious questions going to their merits to proceed in the preliminary injunction analysis. For the following reasons, the Court finds Plaintiffs have not met this burden.

**A. Section 2 of the Voting Rights Act of 1965**

Section 2(a) of the Voting Rights Act prohibits states from imposing any voting qualifications that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C. § 1973(a). "A violation . . . is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation" by racial minorities, in that they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b). A Section 2 violation can "be established by proof of discriminatory results alone." *Chisom v. Roemer*, 501 U.S. 380, 404 (1991).

In evaluating a vote-denial challenge, such as the case here, the Ninth Circuit employs a two-step process. *Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 1012 (9th Cir. 2020). The first question is whether the "challenged standard, practice or procedure results in a disparate burden on members of the protected class." *Id.* "[P]roof of [a] causal connection between the challenged voting practice and a prohibited discriminatory result is crucial." *Gonzalez v. Arizona*, 677 F.3d 383, 405 (9th Cir. 2012) (internal quotation

marks omitted). A "bare statistical showing" of a disparate impact on a racial minority, alone, is insufficient to show a disparate burden. *See Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997).

If a court finds that the challenged practice results in a disparate burden, the next step is to ask whether, under the totality of the circumstances, "there is a relationship between the challenged standard, practice, or procedure, on the one hand, and social and historical conditions on the other." *Hobbs*, 948 F.3d at 1012 (internal quotation marks omitted). This step is not required if a court finds that the challenged voting practices do not impose a disparate burden on minority voters. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 638 (6th Cir. 2016).

Plaintiffs argue the Receipt Deadline results in a disparate burden because the deadline leads to disenfranchisement, Navajo voters have less time to consider their ballots than non-Native voters, and Navajo voters have less access to vote by mail in general because of socioeconomic factors. (Doc. 9 at 19–20.) To make this showing,[1] Plaintiffs compared mail delivery times from five locations on the Navajo Nation reservation to their respective county recorder's office with mail delivery times from off-reservation Arizona cities, including Scottsdale, Flagstaff, Holbrook, and St. John's, to their county recorder's office. (Doc. 9-3 at 32, 53-6 at 6–7.) According to Plaintiffs' study, Certified First-Class mail sent from the off-reservation cities arrived within one to two days while mail from the reservation locations took between four and ten days. Plaintiffs then compared this data with the time frame Arizonans have to send in their vote by mail ballots to meet the Receipt Deadline. Arizona starts mailing out ballots to voters on the permanent early voting list on October 7, 2020. (Doc. 53-3 at 1.) The last day Arizona voters can request a vote by mail

---

[1] In addition to her Motion in Limine, Defendant objected to other evidence presented at the September 22 hearing. As this Court is denying Plaintiffs' Motion for Preliminary Injunction and finds that Plaintiffs' evidence, as conditionally admitted, does not change the outcome, it admits the evidence offered at the hearing. As for the Motion in Limine, in the end Plaintiffs' proposed expert principally testified to facts that he had observed or supervised. Plaintiffs acknowledged that he offered no opinion testimony. Thus, there seems to be no necessity at present to certify the witness as an expert pursuant to Fed. R. Ev. 702 for the purpose of offering opinions. Thus, the Motion in Limine is denied without prejudice to its later reassertion if indicated.

ballot is October 23, 2020. (Doc. 9-3 at 27.) With this data, Plaintiffs estimated that a Scottsdale voter on the permanent early voting list will have 25 days to consider their ballot and meet the Receipt Deadline while a Dennehotso voter, where mail may take 10 days to deliver, only has seven days to consider their ballot. (Doc. 53-3 at 1.) Plaintiffs further showed that a Scottsdale voter that requests a ballot on October 23 has nine days to consider their ballot, while a Dennehotso voter does not have enough time to mail their ballot at all. *Id.* at 2.

Plaintiffs also compared the number of ballot drop-off locations per square mile in Navajo Nation versus in Scottsdale, Flagstaff, Holbrook, and St. John's. (Doc. 53-5 at 1.) Plaintiffs showed great discrepancies in this comparison. For instance, in Scottsdale there is one election day polling location per 13.14 square miles whereas in Navajo Nation there is only one location per 306 square miles.

In addition, Plaintiffs argue that several other factors make it difficult for Navajo members living on-reservation to meet the Receipt Deadline. These factors include that it is difficult for many Navajo Nation members to access the postal service because of lack of home mail delivery, the lengthy distance it takes to get to the post office on-reservation, and the fact that many Navajo Nation members have insufficient funds to travel to a post office. (Doc. 9-3 at 16.) Additionally, post offices are generally not open for as many hours on-reservation as they are off-reservation. (Doc. 53-6 at 7.)

Taken together, Plaintiffs' showing fails to demonstrate that the Receipt Deadline results in a disparate burden on Navajo Nation members living on-reservation. Plaintiffs present no evidence that Navajo voters' ballots are disproportionately thrown out because of the Receipt Deadline. As Arizona's Receipt Deadline has been in law for 23 years, the Court is entitled to expect such evidence. Ariz. Laws 1997, 2nd Spec. Sess. Ch. 5 (S.B. 1003). Additionally, the evidence Plaintiffs do present does not show whether the Receipt Deadline disproportionately impacts Navajo voters *as a protected class*. Plaintiffs only compare mail delivery times and distance to ballot drop-off locations on the reservation to cities, not to other rural areas of Arizona. Therefore, it is not clear whether Plaintiffs'

evidence shows disparities as to Navajo voters, a protected class, versus rural voters, a non-protected class.

To the extent Plaintiffs' evidence can be construed as showing disparities faced by Navajo voters, Plaintiffs still have not shown that the Receipt Deadline results in a disparate burden. Plaintiffs' evidence, if accurate, shows that some Navajo voters have, at worst, only seven days to consider their ballots and still send them in on time. This showing, however, does not take into consideration that mailing a ballot is not the only way to submit a vote by mail ballot. Navajo voters may drop their ballot off at a county recorder's office, ballot drop-box, in-person early voting location, or a voting location on election day. (Doc. 48-1 at 48.) Therefore, even if a Navajo voter waits until October 23 to request a ballot and does not have time to mail the ballot in, that Navajo voter still has several options to get their ballot in on time. In addition, Navajo voters do not necessarily have less time to consider their vote than other voters. Before ballots are sent out, Arizona sends a voter education guide to voters with statements from each candidate, which allows voters to begin considering their vote early. *Id.* at 51. Navajo voters can also utilize the alternative options for returning ballots to optimize their time to consider their ballots.

As Navajo voters have access to several voting options that allow them to turn their ballots in later than the return posting of their ballot allows, Plaintiffs have not shown a disparate burden. Plaintiffs' showing is far weaker than the showings made in successful *and* unsuccessful Section 2 lawsuits. *Compare Democratic Nat'l Comm.*, 948 F.3d at 1014 (finding a disparate burden where Native American, Hispanic, and African American voters were twice as likely to have their out-of-precinct votes not counted), *and League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 245 (4th Cir. 2014) (finding a disparate burden where the state eliminated a voting option that black voters used disproportionately more than white voters), *with Gonzalez*, 677 F.3d at 406, 443 (finding no disparate burden, despite statistical evidence that Latino voters were overrepresented in uncounted ballots, because no expert testified to the causal connection between the law at issue and Latino voting rates).

Plaintiffs argue the alternative forms to mailing a ballot are not adequate remedies because there are far less early voting locations, ballot drop boxes, and election day polling locations per square mile on the Navajo Nation reservation than other Arizona cities. Again, Plaintiffs only compare Navajo Nation, a rural area, to cities, making it unclear whether the distance Navajo voters must travel to access these alternative forms on the reservation is any more severe than other rural parts of Arizona. Regardless, although access to the postal service and these alternative forms may not be as simple for Navajo voters as it is for Scottsdale voters, the Voting Rights Act is not intended to "sweep away all election rules that result in a disparity in the convenience of voting." *Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016). Finding a Section 2 violation for every disparate inconvenience would mean, for example, that every polling place "would need to be precisely located such that no group had to spend more time traveling to vote than did any other." *Id.* Although Plaintiffs certainly show that meeting the Receipt Deadline is more *inconvenient* for Navajo voters than it is for certain voters, for the reasons already discussed Plaintiffs do not make an adequate showing of a disparate burden.

This lawsuit is about whether a deadline for receiving ballots is unlawful. Many of the issues Navajo voters face in accessing the postal service are not a result of the Receipt Deadline and will not be remedied no matter when the deadline to receive ballots is. As for any time pressure Plaintiffs uniquely face because of the Receipt Deadline, Arizona has measures in place to alleviate that pressure. Consequently, Plaintiffs have not demonstrated they are likely to succeed on this claim nor have they raised serious questions as to its merits. As Plaintiffs do not make the requisite showing as to the first step in the Section 2 analysis, the Court does not address the totality of the circumstances test.[2]

---

[2] Plaintiffs' last-minute request for a preliminary injunction also raises serious *Purcell* concerns. In *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006), the Court cautioned against injunctions right before elections, noting that court orders affecting elections "can themselves result in voter confusion and consequent incentive to remain away from the polls." The Court reaffirmed this principle in *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) where the Court stated that it has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." Here, Plaintiffs waited less than three months before the general election to challenge a law that has been in place for 23 years. Defendant presented evidence that a change to the Receipt Deadline for only a subset of the Arizona population

### B. Equal Protection under the Fourteenth Amendment

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race must plead intentional or purposeful unlawful discrimination. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). Evidence of discriminatory impact is relevant to this inquiry, but this evidence alone is insufficient except in the rare circumstance where the discriminatory impact is "unexplainable on grounds other than race." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see, e.g.*, *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

Plaintiffs argue the Receipt Deadline violates the Fourteenth Amendment because the deadline, in conjunction with Arizona's history of discrimination against Navajo voters, limits voting by mail opportunities for Plaintiffs. (Doc. 9 at 21.) However, Plaintiffs have provided no evidence on the reasons why Arizona enacted the Receipt Deadline. Furthermore, as already discussed, Plaintiffs have provided no evidence that ballots from Navajo voters living on-reservation are disproportionately rejected as compared to other rural voters and have not made a strong showing that Plaintiffs are likely to be disproportionately impacted by the Receipt Deadline. As Plaintiffs fall far below the showing of discriminatory intent required by *Arlington Heights*, Plaintiffs have not demonstrated that they will likely succeed on this claim or raised serious questions as to its merits.

---

will cause voter confusion about which deadline applies to them, complicate ballot processing, and clash with the mandated timelines for other election laws. (Doc. 48-1 at 39–43.) They also presented evidence that the remedy sought would not be feasible and would, itself, be unfair to other voters. Because of the disruption Plaintiffs' proposed remedy would likely cause and the timing of Plaintiffs' suit, *Purcell* further counsels against the issuance of a preliminary injunction.

### C. Free and Equal Elections Clause under the Arizona Constitution

Article 2, Section 21 of the Arizona Constitution states that "elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." In interpreting what protections Arizona's framers intended by this clause, the Arizona Court of Appeals considered how other states interpret their similar constitutional provisions. *Chavez v. Brewer*, 222 Ariz. 309, 319, 214 P.3d 397, 407 (Ct. App. 2009). The court noted that other states generally interpret such clauses to mean that a "free and equal" election is one where "the voter is not prevented from casting a ballot by intimidation or threat of violence, or any other influence that would deter the voter from exercising free will, and in which each vote is given the same weight as every other ballot." *Id.* Based on this review, the court did not delineate the entire scope of what Arizona's election clause covers but did conclude that the "free and equal" clause is implicated when votes are not properly counted. *Id.* at 320, 408.

Plaintiffs argue Defendant violated Article 2, Section 21 because "Plaintiffs do not have equal access to [voting by mail] procedures." (Doc. 9 at 22.) However, Plaintiffs have not presented evidence that aligns with the precedent from Arizona courts concerning the interpretation of Article 2, Section 21 of the Arizona Constitution. Plaintiffs have provided no evidence that, because of the Receipt Deadline, Navajo voters are unable to cast a vote because of intimidation or lack of free will. Furthermore, Plaintiffs have provided no evidence that Defendant selectively enforces the Receipt Deadline. As a result, Plaintiffs will not likely succeed on the merits of this claim nor have Plaintiffs raised serious questions as to the merits.

### CONCLUSION

Because Plaintiffs have failed to establish that they are likely to succeed on any of their claims, or even raise serious questions going to the merits of their claims, the Court need not consider the existence of an irreparable injury. *Germon v. Times Mirror Co.*, 520 F.2d 786, 788 (9th Cir. 1975).

**IT IS HEREBY ORDERED** that Plaintiffs Darlene Yazzie, Caroline Begay, Leslie

| | |
|---|---|
| 1 | Begay, Irene Roy, Donna Williams, and Alfred McRoye's Motion for Preliminary |
| 2 | Injunction (Doc. 9.) is **DENIED.** |
| 3 | **IT IS FURTHER ORDERED** that Defendant Katie Hobbs' Motion in Limine |
| 4 | (Doc. 51) is **DENIED** without prejudice. |
| 5 | **IT IS FURTHER ORDERED** that the Court will hold a telephonic status |
| 6 | conference **October 9, 2020 at 2:30 p.m.** Mountain Standard Time (Pacific Daylight |
| 7 | Time) to discuss the timeline for responses to Defendant's Motion to Dismiss. Defendant's |
| 8 | counsel shall set up a call-in number on or before **Noon, October 6, 2020** and disseminate |
| 9 | it to all parties, including the Court. |
| 10 | Dated this 25th day of September, 2020. |

*signature*
G. Murray Snow
Chief United States District Judge